KARST  et al., Appellants,

v.

GOLDBERG,  Appellee.

[Cite as *Karst v. Goldberg* (1993), 88 Ohio App.3d 413.]

Court  of  Appeals  of  Ohio,
Franklin  County.

No.  92AP–1480.

Decided  June  29,  1993.

**414**

Raymond L. Eichenberger, for appellants.

Max Kravitz and Janet E. Kravitz, for appellee.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Larry E. Karst and Alys Ruth Karst, appellants, from the October 15, 1992 decision and entry of the Franklin County Court of Common Pleas, which entered judgment in favor of appellee, Anthony E. Goldberg, and dismissed the case with prejudice.

Appellants filed this timely appeal and raise the following assignments of error:

"I. Assignment of Error No. 1

"The trial court erred in directing a verdict against appellants based upon its decision that as a matter of law the Ohio Consumer Sales Practice Act was not violated by appellee Goldberg.

"II. Assignment of Error No. 2

"The trial court erred as a matter of law by refusing to permit appellants to testify as to admissible statements made to appellants by defendant Jerry Freeman concerning the fact that the satellite system components were used and not new.

"III. Assignment of Error No. 3

"The trial judge erred as a matter of law in directing a verdict against the appellants on their cause of action based upon fraud."

On August 26, 1989, appellants bought a satellite television system from appellee. The price of the system, which included the satellite dish, the antenna, television/VCR hook-ups and installation, was $3,898.23. Appellants paid $398.23

on August 26 and the balance of $3,500 on September 4, 1989. The satellite television system performed in a satisfactory manner until approximately ten months after the installation of the system. At that time, the motor malfunctioned and appellee told appellants to contact Jerry Freeman (referred to as "Jerry Friedman" in the transcript) for repairs. The motor was still covered by the one-year warranty provided for in the sales agreement. Freeman fixed the motor and appellee paid Freeman for the new motor. However, the satellite television system continued to malfunction. Appellants testified that they called Freeman several times to fix their satellite system. Appellants testified that all channels would be "completely blank." This happened several times and, after several attempts to fix the satellite television system, Freeman refused to do any further work on the system. Appellants then took the satellite module box to the Consumer Satellite Center on Hamilton Road for repair. Appellants testified that, at this point in time, they had no picture at all on their television set. Technicians at the Consumer Satellite Center discovered a computer chip in the module which illegally unscrambled otherwise scrambled television signals. The FBI was contacted, and Bureau Agent David Schroeder seized the satellite module component.

Appellants filed a complaint against appellee, Anthony E. Goldberg, on November 15, 1990. The complaint alleged that, with regard to the sale of the satellite system, appellee had committed breach of contract, fraud and violations of the Consumer Sales Practices Act, R.C. 1345.01 *et seq.* On July 23 and 24, 1992, this case came on for trial to a jury. At trial, the parties stipulated to the existence of a plea agreement of appellee, whereby he pled guilty to violations of Section 2320(a), Title 18, U.S.Code and Section 605(e)(4), Title 47, U.S.Code. These sections prohibit trafficking in counterfeit goods and prohibit the interception of scrambled signals if a fee has not been previously paid to the broadcasters of these signals.

After appellants' case-in-chief, appellee moved for a directed verdict. The trial court sustained the directed verdict on all claims and entered its judgment entry on October 15, 1992.

In the first assignment of error, appellants argue that the trial court erred in directing a verdict against them on their cause of action based upon violations of the Consumer Sales Practices Act ("CSPA"). Civ.R. 50(A)(4) provides, in pertinent part:

"When a motion for a directed verdict has been properly made, and the trial court, *after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion* upon the evidence submitted and that

conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." (Emphasis added.)

The Ohio Supreme Court has also explained that the weight of the evidence and the credibility of witnesses are not relevant when determining the appropriateness of a directed verdict. In *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338, the court stated:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318, 89 N.E.2d 138]; *Ayers v. Woodard* (1957), 166 Ohio St. 138 [1 O.O.2d 377, 140 N.E.2d 401]; Civ.R. 50(A) and (B)."

Furthermore, the trial court must assume the truth of the facts asserted by the nonmoving party and must deny a motion for a directed verdict if *any* evidence of a substantial probative value exists to support the nonmoving party's claim. The Ohio Supreme Court, in *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 116–117, 430 N.E.2d 935, 938, stated:

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The 'reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim. See *Hamden Lodge v. Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469 [189 N.E. 246]. * * *"

In the case before us, the record reflects conflicting testimony as to what appellee did or did not represent to appellants. Appellants testified that appellee materially misled them by telling them that they would pay a one-time fee for the satellite dish, would receive all channels, and would never have to pay another monthly cable bill. Appellants further testified that there was no mention of

certain signals being scrambled, nor did appellee tell them that what they wanted to do was illegal.

Appellee testified that it was appellants who brought up the question of finding a way to receive scrambled channels for free. Appellee admitted that the module that he sold appellants had an illegal computer chip. He also testified that he informed appellants of this fact and told them that what they were doing was illegal.

This transaction clearly falls within the purview of CSPA. CSPA applies to "consumer transactions," which are defined to include "a sale * * * to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). Under CSPA, a supplier is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions * * *." R.C. 1345.01(C). CSPA prohibits a supplier from committing a "deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). CSPA also prohibits unconscionable acts or practices in connection with a consumer transaction under R.C. 1345.03.

R.C. 1345.03(B) provides:

"In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

" * * *

"(3) Whether the supplier *knew at the time* the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

" * * *

"(6) Whether the supplier *knowingly* made a misleading statement of opinion on which the consumer was likely to rely to his detriment[.]" (Emphasis added.)

Courts have recognized a distinction between R.C. 1345.02 and 1345.03 of CSPA, and have required scienter to prove a violation of the latter. A consumer does not need to prove intent or scienter to prove a violation of R.C. 1345.02, but proof of scienter is required under R.C. 1345.03. In *Thomas v. Sun Furniture Co.* (1978), 61 Ohio App.2d 78, 11 O.O.3d 26, 399 N.E.2d 567, the Court of Appeals for Hamilton County reviewed the legislative history of CSPA provided by the Legislative Service Commission. The court found that:

" * * * [T]he very reason for the enactment of the Consumer Sales Practices Act was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in

order to establish fraud. To require proof of intent would effectively emasculate the act and contradict its fundamental purpose." *Id.* at 81–82, 11 O.O.3d at 29, 399 N.E.2d at 570.

However, the court focused specifically on R.C. 1345.02, which focuses on unfair or deceptive practices. The court noted that R.C. 1345.02 differed from R.C. 1345.03, which discusses unconscionable acts, and stated in pertinent part:

"[W]e conclude that the legislature did not contemplate that proof of an intent to deceive should be required to establish a violation of R.C. 1345.02. First, the word 'intent' is not included in the section. It easily could have been, had that been the legislature's intent. *Second, this omission of a required mental state on the part of the supplier contrasts with the explicit requirement included in R.C. 1345.03 that acts be done* 'knowingly.' " (Emphasis added.) *Id.* at 80, 11 O.O.3d at 28, 399 N.E.2d at 569.

The Court of Appeals for Trumbull County followed this reasoning in *D & K Roofing, Inc. v. Pleso* (1991), 77 Ohio App.3d 181, 184, 601 N.E.2d 561, 563, wherein the court stated:

" * * * Proof of intent to deceive is not a prerequisite to establishing a violation of R.C. 1345.02(A). As the court held in *Brown v. Bredenbeck* (C.P. 1975), 2 O.O.3d 286, 287:

" ' * * * the place to look to determine the presence of a deception is in the state of mind of the consumer, and not at the intent of the supplier. Thus, if the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive.' "

The court also noted that this was in contrast to R.C. 1345.03, which required knowledge as a prerequisite to liability. *Id.* The Court of Appeals for Montgomery County addressed the knowledge requirement of R.C. 1345.03 in *Bierlein v. Bernie's Motor Sales, Inc.* (June 12, 1986), Montgomery App. No. 9590, unreported, 1986 WL 6757, stating, in pertinent part:

"This court holds that scienter is a necessary element which must be proven prior to an *unconscionable* act being found under R.C. 1345.03." (Emphasis added.)

Under R.C. 1345.01(E), the legislature has defined "knowledge":

" 'Knowledge' means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

█ In order to recover under R.C. 1345.03, a consumer must show that a supplier acted unconscionably and knowingly. Appellants have failed to offer any

such evidence.  Accordingly, the trial court was correct in directing a verdict as to the CSPA claims, insofar as they were based on violations of R.C. 1345.03.

However, it is clear that there is evidence to substantiate the appellants' claims under R.C. 1345.02.  Both Mr. and Mrs. Karst testified that appellee failed to disclose to them that what they were doing was illegal.  They further testified that they believed that they could pay a one-time fee for the satellite, receive all channels and never have to pay another cable fee.  Appellants allege that they relied on appellee's statements and purchased a satellite television system for $3,898.23.  The Consumer Sales Practices Act provides that it is an unfair and deceptive act to represent:

"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

" * * *

"(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist[.]"   R.C. 1345.02(B).

Construing the facts in favor of appellants, this court must assume that appellants believed that they would legally receive a satellite television system that would allow them to have all channels for a one-time fee.  This was not the case.  While this court cannot condone the fact that appellants were receiving scrambled channels illegally, we must construe the evidence in favor of appellants, who testified that they never would have bought this system had they known that (1) it was illegal; and, (2) they would still have to pay monthly cable fees.  In fact, appellants testified that they would have been better off if they had just kept their monthly cable subscription with Coaxial.  Given these facts, appellants were damaged at least to the extent that they bought a system for nearly $4,000 which, in fact, did not always work.  Appellants further testified that the channels they were receiving *legally* continued to go blank.  Appellants allege that appellee committed unfair and deceptive acts in his selling of the satellite system to them.  Given the fact that there is conflicting testimony as to what was or was not represented, and construing the evidence in favor of appellants, we find that the trial court erred in directing a verdict for appellee on the CSPA claim under R.C. 1345.02.  There is evidence of substantial probative value in the record to support appellants' claims.  The jury should have had the opportunity to weigh the evidence and critique the credibility of the witnesses to determine what was or was not said, and to determine if such statements constituted unfair or deceptive acts under the CSPA.  Thus, appellants' first assignment of error is well taken and is sustained with regard to their claims under R.C. 1345.02.

■ Appellants' third assignment of error alleges that the trial court erred as a matter of law in directing a verdict on appellants' fraud claim. Paragraph two of the syllabus in *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, provides, in pertinent part:

"The elements of fraud are:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance. (*Cohen v. Lamko, Inc.* [1984], 10 Ohio St.3d 167 [10 OBR 500, 462 N.E.2d 407], followed.)"

Again, the standard to be applied in determining the appropriateness of a directed verdict is to construe all of the evidence in favor of the nonmoving party. A directed verdict will not be upheld if there is *any* evidence of substantial probative value in support of the nonmoving party's claim. Upon review of the record, we cannot find any evidence to support an essential element needed to prove fraud. A cause of action for fraud, unlike the cause of action brought under R.C. 1345.02 of CSPA, requires scienter. The statement must be made with knowledge of its falsity and with the *intent* to mislead another into reliance. A cause of action for fraud is more difficult to prove because one of the essential elements that must be proven is the state of mind of the alleged perpetrator of the fraud. As we noted before, this difficulty was part of the reasoning behind the language of the Consumer Sales Practices Act. The legislature sought to make it easier for a consumer to recover damages from a supplier, without having to prove that the supplier possessed scienter. Therefore, we hold that the trial court did not err as a matter of law in granting the directed verdict on the fraud claim, for there does not exist "any evidence of substantial probative value" in the record to support all of the essential elements needed to prove fraud. *Ruta, supra.* Therefore, appellants' third assignment of error is overruled.

■ Appellants' second assignment of error contends that the trial court erred as a matter of law by refusing to permit appellants to testify as to statements allegedly made by defendant, Jerry Freeman, concerning the fact that the satellite system components were used and not new. The trial court held that such statements were inadmissible. Appellants argue that Jerry Freeman's

statements are admissible under Evid.R. 801(D)(2) or, in the alternative, under Evid.R. 804(A)(5).

A trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. In *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058, the Ohio Supreme Court held:

"Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. *E.g., State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. *E.g., Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142."

Appellants first argue that Jerry Freeman was an employee of appellee, Anthony E. Goldberg, and, as such, his statements to appellants were admissible under Evid.R. 801(D)(2). In the alternative, appellants argue that Freeman's statements should be admissible under Evid.R. 804(A)(5), since the declarant was unavailable to testify at trial and the statements made were against his pecuniary interest.

Upon careful review of the record, this court is unable to find any substantial probative evidence to indicate that Jerry Freeman was an employee or an agent of appellee Anthony E. Goldberg. Both Mr. and Mrs. Karst testified that Goldberg told them to contact Jerry Freeman if they needed any repairs. This is the sole basis for their belief that Jerry Freeman was an employee/agent. Appellee testified that Freeman was a subcontractor who installed and repaired systems for him, but Freeman did not work exclusively for him. Appellants testified that, in June 1990, appellee told them to call Freeman to repair the motor when it malfunctioned. Mr. Karst further testified that appellee paid Freeman for replacing the motor. After the first repair for the motor, appellants called Freeman directly for repairs. Mrs. Karst also paid Freeman directly and did not pay appellee for any repairs. Appellee was not aware of any service calls after the June 1990 replacement of the motor, because the Karsts never contacted him. Mr. Karst testified that he received a business card from Freeman

which did not have appellee's name nor appellee's company name "Multi-visions" on it. Based upon the evidence in the record, we cannot find any substantial probative evidence to prove appellants' assertion that Freeman was an employee or an agent of appellee. In fact, the evidence indicates just the opposite result. Given the above facts, we cannot conclude that the trial court acted unreasonably, arbitrarily or unconscionably.

██ Appellants argue, in the alternative, that Evid.R. 804(A)(5) applies and the trial court should have admitted Freeman's statements, since he was unavailable at trial and the statements made were against his pecuniary interest. Evid.R. 804(A)(5) defines "unavailability" to include a situation where the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means." In the instant action, there was no service of process on Freeman. The trial court pointed out that the complaint and summons "came back with absolutely no reason on it at all. Didn't come back unclaimed, didn't come back refused, insufficient address, no such address, none of—nothing was checked on there." The Ohio Supreme Court has followed a two-part test to determine the admissibility of hearsay. *State v. Keairns* (1984), 9 Ohio St.3d 228, 9 OBR 569, 460 N.E.2d 245. The court stated, in pertinent part:

"The first prong of the test is a rule of necessity. Generally, this requires a showing that the declarant is unavailable to testify. * * *

"The second prong requires that the out-of-court statement bear sufficient indicia of reliability." *Id.* at 230, 9 OBR at 571, 460 N.E.2d at 248.

In the *Keairns* case, the court explained that the issuance of a subpoena alone was not sufficient to show that a good faith effort was made to secure the presence of a witness. The Ohio Supreme Court further held in the third paragraph of the syllabus:

"A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered."

In the instant action, counsel for appellants merely described to the court what he normally does to locate a witness. Even assuming *arguendo* that appellants' counsel made reasonable good faith efforts to secure Freeman's presence at trial, the second prong of the test has not been met. Evid.R. 804(B)(3) requires that there be "corroborating circumstances [to] clearly indicate the trustworthiness of the statement." In the *Keairns* case, the statements being offered had been given under oath and certainly had some indicia of reliability. Yet, the court held that these statements were inadmissible. Statements made under oath clearly have more indicia of reliability than statements made in private to an interested

party to a lawsuit. In the instant action, appellants seek to admit statements that are allegedly against Freeman's pecuniary interest, and yet have failed to offer any corroborating circumstances to show the trustworthiness of the alleged statements as required by Evid.R. 804(B)(3). Accordingly, we hold that the trial court did not err in excluding the hearsay statements of Jerry Freeman, and appellants' second assignment of error is overruled.

For the reasons set forth above, appellants' first assignment of error is sustained. Appellants' second and third assignments of error are overruled and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part and cause*
*remanded for further proceedings.*

REILLY, J., concurs.

WHITESIDE, J., concurs in part and dissents in part.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.

WHITESIDE, Judge, concurring in part and dissenting in part.

Although I concur in the sustaining of the first assignment of error and the reversal of the judgment, I cannot concur in the overruling of the second and third assignments of error.

With respect to the first assignment of error and application of R.C. 1345.02, I concur in the majority opinion with the understanding that we are not holding that no scienter is required but only that proof of intent to deceive is not required. Intent to induce the sale by the buyer's reliance upon the type of representation set forth in R.C. 1345.02(B) or similar unfair or deceptive acts is required. R.C. 1345.03(B)(6) applies to misleading statements of opinion rather than the misrepresentation of fact delineated in R.C. 1345.02(B), which places upon the seller an obligation to know whether the representations made are true. However, the evidence construed in appellants' favor establishes that appellee knowingly made a false statement of fact to induce appellants to purchase the system and that appellee acted unconscionably.

The third assignment of error should be sustained for the reasons stated in connection with the first. Although the majority opinion correctly notes there must be proof that the misrepresentation was "made with knowledge of its falsity and with the intent to mislead another into reliance," reasonable minds could reach *only* that conclusion *if* the evidence be construed most strongly in favor of

appellants. Appellee admits he knew the satellite contained an illegal computer chip, yet he told appellants that, by paying a one-time fee, they could receive all channels and never pay another fee. This was false and misleading, and appellants relied upon it as an inducement to purchase the equipment. This is simply a classic case of common-law fraud when appellants' evidence is accepted. It is difficult to conceive how, unless admitted by appellee, fraud could ever be proved if the evidence in this case be insufficient, when construed in appellants' favor, to meet the directed-verdict test.

Appellee, on cross-examination, admitted he knew the descrambling chips were illegal but contended he put them in satellite systems only if the customer requested it after being fully informed. There is a conflict of evidence, appellants' testifying that they did not know their system contained an illegal chip until advised by agent Schroeder, who also testified. The third assignment of error should also be sustained.

Likewise, the second assignment of error should be sustained. The majority finds there is no evidence that Freeman was an employee of Goldberg. However, showing one to be an employee is not the test for application of Evid.R. 801(D)(2), which provides that a statement is not hearsay if:

"The statement is offered against a party and is * * * (d) a statement by his agent * * * concerning a matter within the scope of his agency * * * made during the existence of the relationship * * *."

At the time the evidence was excluded by the trial court, the only evidence was that Goldberg sent Freeman to install the system, that he showed Freeman where to install the disk, that he told appellants that Freeman "was his repairman" and to call Freeman if repairs were needed, and also that appellants understood Freeman worked for Goldberg. In addition, there was evidence that appellants wrote a check payable to Freeman for the first repair call. There was ample evidence that Freeman was Goldberg's agent.

The trial court did not conduct any type of voir dire to permit appellee to present evidence on the agency issue. However, upon cross-examination, Goldberg admitted that Freeman worked for him but as "a subcontractor, installing satellite systems" and further admitted that Freeman made at least one service call for him to replace the motor under warranty "and simply charged the service call, which we do after 30 days." In short, the evidence indicates Freeman was Goldberg's agent with respect to installation and warranty service and, thus, Freeman's statements would be admissible if within the scope of the agency. The statement sought to be admitted was to the effect that part of the system was used, not new. Although this may not be the major foundation for appellants' claim, the trial court should have either allowed the statement in

evidence or conducted a voir dire examination out of the jury's presence upon the objection.   Therefore, the second assignment of error should be sustained.