**GLOVER et al., Appellants,**

v.

**BOEHM PRESSED STEEL CO., Appellee.**

[Cite as *Glover v. Boehm Pressed Steel Co.* (1997), 122 Ohio App.3d 702.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71554.

Decided Sept. 8, 1997.

*Paige A. Martin,* for appellants.

*William F. Snyder* and *Laurence R. Snyder,* for appellee.

MATIA, Judge.

Frank and Cheryl Glover, plaintiffs-appellants, appeal from the judgment of the Cuyahoga County Court of Common Pleas, case No. CV–297650, in which the trial court granted the motion for directed verdict of Boehm Pressed Steel Company, defendant-appellee. Plaintiffs-appellants assign two errors for this court's review.

Plaintiffs-appellants' appeal is well taken.

## I. THE FACTS

On November 1, 1995, Frank and Cheryl Glover, plaintiffs-appellants, filed a five-count complaint in the Cuyahoga County Court of Common Pleas against Glover's former employer, Boehm Pressed Steel Company. Glover alleged that Boehm Pressed Steel had unlawfully discriminated against him in the terms and conditions of his employment in violation of R.C. 4112.01 *et seq.;* that Boehm Pressed Steel had wrongfully terminated Glover in violation of both federal and state laws prohibiting racial discrimination and retaliatory discharge; that Boehm Pressed Steel, through its employees, had intentionally inflicted emotional distress on Glover by its ratification of outrageous and offensive racist conduct; that Cheryl Glover had suffered a loss of the services and consortium of her husband; and that Boehm Pressed Steel had fraudulently induced Glover into leaving his prior employment with PAR Industries. Count five was voluntarily dismissed by plaintiffs-appellants prior to the beginning of trial.

On October 2, 1996, the case came on for a jury trial. At trial, the following facts were developed. Glover began his employment with Boehm Pressed Steel on August 2, 1993 as the company's first full-time African–American employee. Glover was hired to be the supervisor of "single hit" operations. "Single hit" refers to a specific type of punch press used in the manufacture of pressed steel items.

Soon after beginning his employment at Boehm Pressed Steel, Glover began having difficulty with two employees in his department, Tony Walton and Dennis Smith. Both Walton and Smith refused to take direction, cursed at Glover, and allegedly threatened Glover on more than one occasion. However, Glover testified that neither Walton nor Smith used any words that could be considered to have a "racial overtone" during this period. Glover filed disciplinary reports on Anthony Walton for "unexcused absences and tardiness" on September 2, September 21, October 12, and December 12, 1993. As a result of these disciplinary reports, Boehm Pressed Steel terminated Walton's employment on December 13, 1993. Similarly, Glover filed disciplinary reports on Dennis Smith for "unexcused absences and tardiness" on September 25, October 19, and November 15, 1993. As a result of these disciplinary reports, Smith's employment was terminated on November 15, 1993.

During this period, Glover had an ongoing dispute with another employee, David Strunk. In addition to being insubordinate and argumentative, Glover alleged, Strunk cursed him and threatened to kill him with a work boot. Glover also maintained that Strunk had allegedly told the union steward, Lewis Brooks, that he would never work for a "nigger." Brooks did not recall this comment during his trial testimony. As a result of these incidents, management issued a

written reprimand to Strunk and warned him that further insubordinate conduct would result in his termination.

On February 4, 1994, there was yet another incident between Glover and David Strunk, in which Strunk allegedly activated a punch press while Glover's hands were still in the point of operation. Glover escaped injury, but, due to the serious potential consequences of this act, Boehm Pressed Steel terminated David Strunk that same day.

Glover also experienced a problem with Mike Cervelli, a maintenance man with Boehm Pressed Steel, who had used the phrase "nigger-rig" in Glover's presence to describe a certain type of repair. Glover estimated that Cervelli used the racially derogatory term approximately four times before management warned him to stop. Even after management's warning, Cervelli still used the term on one additional occasion. Glover maintained that management maintained a less-than-vigilant attitude toward Cervelli's conduct throughout Glover's employment.

Glover testified further that he had experienced problems with a fellow supervisor at Boehm Pressed Steel, Marcelo Javanov. Allegedly, Javanov had used the word "nigger" while at the workplace in Glover's presence and maintained a hostile and critical attitude toward Glover. During trial, Javanov testified that he had made the following statement to Glover: "I would never consider calling you the N-word. And if I did it would only be because I was mad at you." Glover repeatedly complained to management regarding Javanov's use of racial slurs and generally demeaning behavior to no avail.

In October, 1994, Glover was permanently laid off by Boehm Pressed Steel. Boehm Pressed Steel maintained that Glover was being laid off because the company was moving to a new location in Valley City, Medina County, Ohio, and consequently would be reducing single-hit production significantly. This reduction meant that the company would need only two supervisors to cover the single-hit, automatic, maintenance, and tool room areas. Boehm Pressed Steel maintained further that the company did not replace Glover but merely consolidated his former responsibilities under another supervisor.

During the trial, plaintiffs-appellants' counsel attempted to move for a mistrial on the record in the presence of the jury. The following exchange between counsel and the trial court occurred:

"THE COURT: Mr. Glover, you may step forward, please, and resume the stand.

"MS. MARTIN: Your Honor, before he does that I have a motion.

"THE COURT: Approach the side bar. Why don't you come up and take the stand, Mr. Glover.

"THE WITNESS: Yes, ma'am.

"MS. MARTIN: I'd like the record to show I've asked for a mistrial.

"THE COURT: Okay. Well, we are going to have a hearing at this time because I indicated we would go on the record with that later. So ladies and gentlemen, you may step out.

"* * *

"(Thereupon, the following proceedings were had in open court in the absence of the jury:)

"* * *

"THE COURT: You may be seated. Before commencing with this witness I had asked Mr. Glover to resume the stand for cross-examination. Counsel had indicated she had a motion. I gave her permission to approach the bench and she indicated she had a motion she wished to make for a mistrial based on judicial misconduct and irregularity. And I indicated that she would have access to the record later, but we were going to proceed at this time. And throughout the course of this trial I have given counsel access to make a record. Obviously counsel has a right to supplement the record at any time on appeal should that become appropriate under 9(C).

"After walking away from the bench and in front of a jury[,] counsel made the comment that, 'At this time I would ask for a mistrial.' And I want to know why you did that.

"MS. MARTIN: Because, your Honor, it's important that you entertain this motion now because the—my client is not getting a fair trial. And for you to permit a proceeding to go on in the face of an allegation of judicial misconduct is inappropriate conduct—

"THE COURT: And how would that—

"MS. MARTIN:—and a violation of the code.

"THE COURT: How would that remedy the situation, you speaking up in front of a jury and saying the words, 'I want a mistrial?' How is that going to help your client out, that type of conduct?

"MS. MARTIN: Your Honor, I would appreciate an opportunity to complete my sentences for the record.

"THE COURT: You're in direct contempt of court, and I'm fining you $250. You may be seated. I told you we would go on the record at a later time with regard to your motion for a mistrial. It is going to be denied but you'll have access to the record. Bring the jury out. Don't you dare do that to me again in front of a jury. And that will be docketed."

Eventually, the trial court denied appellants' motion for a mistrial.

At the close of appellants' case, defense counsel moved for a directed verdict pursuant to Civ.R. 50(A)(4), arguing that appellants had failed to meet the evidentiary burden necessary for the underlying case to proceed to the jury. The trial court granted defense counsel's motion for directed verdict; however, in so doing, the trial court made the following statement:

"With regard to Mr. Cervelli, I believe he was the maintenance man. And again, I'm construing the evidence in the light most favorable to the defense. And in large major relying on the testimony of Mr. Glover himself."

On November 6, 1996, appellants filed a timely notice of appeal from the judgment of the trial court.

## II.   FIRST ASSIGNMENT OF ERROR

Frank and Cheryl Glover's first assignment of error states:

"The trial court construed the evidence at trial in favor of defendant-appellee, and improperly directed a verdict against plaintiff-appellants, even though every element of the discrimination claim was proven."

A.   THE ISSUE RAISED: WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT–APPELLEE'S MOTION FOR A DIRECTED VERDICT.

Appellants argue, through their first assignment of error, that the trial court incorrectly granted a motion for directed verdict in favor of defendant-appellee. Specifically, appellants maintain that the trial court improperly construed the evidence presented at trial in a light most favorable to defendant-appellee, as evidenced by the trial court's blatant admission in open court. It is appellants' position that had the trial court applied the proper standard of review for a motion for a directed verdict, the appellee's motion would have been denied, as sufficient evidence was presented to enable the case to proceed to the jury for determination on the merits.

Appellee argues that a review of the trial court's entire ruling clearly demonstrates that the trial court did, in fact, construe all of the evidence presented in a light most favorable to appellants as required under Civ.R. 50(A). Appellee maintains that the portion of the trial transcript upon which appellants rely merely represents an inadvertent misstatement by the trial court, not the application of an incorrect standard. It is appellee's position that, when viewed in context, the trial court's ruling was proper and supported by the record.

Appellants' first assignment of error is well taken.

B. STANDARD OF REVIEW FOR AN EMPLOYER–DISCRIMINATION CLAIM.

R.C. 4112.02(A) states that it is an unlawful, discriminatory practice:

"For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

In *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128, 672 N.E.2d 145, 147–148, the Ohio Supreme Court stated that a plaintiff-employee may prove a claim of employer discrimination pursuant to R.C. 4112.02 by two separate methods:

"Discriminatory intent may be established indirectly by the four-part analysis set forth in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, adopted from the standards established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The *Barker* analysis requires that the plaintiff-employee demonstrate '(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of a person not belonging to the protected class.' *Id.,* paragraph one of syllabus."

The court stated further that discriminatory intent may also be established by direct evidence of discrimination, "which is evidence other than the four-part demonstration of *Barker. Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. A plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent. *Mauzy [v. Kelly Services, Inc.* (1996)], 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph one of syllabus." *Id.* at 128–129, 672 N.E.2d at 148.

C. STANDARD OF REVIEW FOR A MOTION FOR A DIRECTED VERDICT.

Civ.R. 50(A), which sets forth the grounds upon which a motion for directed verdict may be granted, states:

"(A) Motion for directed verdict.

"(1) When made. A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence.

"(2) When not granted. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.

"(3) Grounds. A motion for a directed verdict shall state the specific grounds therefor.

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to that party. Civ.R. 50(A)(4); *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184, 1 OBR 213, 438 N.E.2d 890; *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027.

■ A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of this claim. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357, 360–361. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141, 141–142; *Vosgerichian v. Mancini Shah & Associates, et al.* (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, unreported, 1996 WL 86684.

D. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR DIRECTED VERDICT OF DEFENDANT–APPELLEE.

■ The trial court improperly granted the motion for directed verdict of Boehm Pressed Steel. In ruling on the motion the trial court relied upon specific evidentiary examples in support of its decision. One such example was Glover's relationship with David Strunk, which the trial court characterized as follows:

"With regard to employee Strunk, he apparently did not get along with Mr. Glover. He was insubordinate. He was difficult and so on and so forth. There is double or triple hearsay present at trial that he supposedly made the

statement, 'I won't work for a nigger.' Even if I assume that the statement is true, management again responded to the insubordinate conduct of Mr. Strunk. And it needs to be emphasized that Strunk did not do his job properly, did not work with other employees well and he apparently was not a team player. There is no racial overtone to his conduct. Apparently he was just a poor employee."

This characterization by the trial court contradicts the direct testimony of Glover, who testified:

"A. Prior to the problems with David I was warned by a gentleman named Lewis Brooks, which at the time was the shop steward. He took me in my office out on the floor and told me that, 'Frank—' he says, 'I want to tell you something.'

"I said, 'What is that, Lewis?'

"He said, 'David Strunk told me that he is not going to work for no N-words.'

"I said, 'Well, why are you telling me this?'

"He says, 'I just thought I might want to warn you.'

"I said, 'Okay, thank you.' And then from that point on I've had problems with David. The one I just discussed in which led up to the incident of him trying to take my arms off in the press, which he denied."

Clearly, in this instance, the trial court construed the evidence regarding David Strunk in a light most favorable to defendant-appellee by finding that Strunk's conduct had "no racial overtone." Such a finding is improper in light of the requirement that the trial court view the evidence in favor of the nonmoving party when considering a Civ.R. 50(A) motion for a directed verdict. *Bentley v. Stewart* (1992) 71 Ohio App.3d 510, 594 N.E.2d 1061.

Similarly, the trial court characterized the reasons for Glover's termination as follows:

"After the defendant's moved their small steel plant, and I want to emphasize that this was a small—excuse me, manufacturing facility of approximately 40 employees. 7 of the defendants—12 machines on which the defendant worked in Mr. Glover's division were eliminated and were not transferred to the new plant, nor were they replaced. In light of this reduction of the machines to work on, the plaintiff was laid off as a supervisor. The remaining duties were spread about and consolidated amongst the other three supervisors.

"There has been no testimony brought forward indicating that this was a preternatural dismissal. There is absolutely no testimony whatsoever that this was in retaliation for any conduct. Apparently, there had been no complaints at this time filed with the Civil Rights Commission by Mr. Glover. Any other

complaints he had made with regard to the employees, as I stated earlier were very promptly and forcefully addressed by management in this case."

Once again, the trial court's statements are in direct contravention of the testimony of Glover, who maintained that the company was aware of the upcoming relocation at the time he was hired:

"Q. Okay. Did they talk to—did Mr. Geib talk to you in this interview at all about Boehm Pressed Steel's plan to move?

"A. Yes, he did.

"Q. Would you please describe what those discussions were?

"A. He said that they were not going to be in Cleveland forever. He said that in April they were supposed to make a move from Cleveland to the Valley City area, and then I would be a part of that move. And that he understands that the building that they were in is pretty old, pretty worn down so don't be surprised when you see it. That, you know, 'We want to take you with us and you're going to be a part of it.' "

Assuming the accuracy of Glover's testimony, it is apparent that the trial court again construed the evidence relating to the termination of Glover in a light most favorable to Boehm Pressed Steel in violation of Civ.R. 50(A).

For the foregoing reasons, this court finds that the trial court improperly granted the motion for a directed verdict in favor of Boehm Pressed Steel.

Appellants' first assignment of error is well taken.

## III.  SECOND ASSIGNMENT OF ERROR.

The Glovers' second assignment of error states:

"The trial court erred in denying plaintiff-appellant's motion for a mistrial since the court arbitrarily prevented counsel from making a record for appeal and misapplied the law to the case."

### A.  THE ISSUE RAISED: WHETHER THE TRIAL COURT ERRED IN DENYING PLAINTIFFS–APPELLANTS' MOTION FOR A MISTRIAL.

Plaintiffs-appellants argue, through their second and final assignment of error, that the trial court erred in denying their motion for a mistrial. Due to this court's disposition of plaintiffs-appellants' first assignment of error, the remaining assignment of error is hereby rendered moot pursuant to App.R. 12(A)(1)(c) and will not be considered.

Judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SPELLACY, J., concurs.

JAMES D. SWEENEY, C.J., concurs in judgment only.