JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiffs-appellants, Alan and Nancy Suttle, appeal from the trial court's granting a directed verdict in favor of defendant-appellee, Michael A. DeCesare, at the close of defendant's case in chief. For the reasons adduced below, we affirm.
 {¶ 2} A review of the record on appeal indicates that appellants, after filing suit in common pleas court, had recovered an arbitration award in the amount of $64,412.42 against N.T.M., Inc. dba Arlington Homes of Westlake, stemming from a residential home construction dispute. See Suttle v. DeCesare (July 5, 2001), Cuyahoga App. No. 77753. The arbitration award also determined that DeCesare was not personally liable for the award, thereby leaving NTM solely liable for the award.
 {¶ 3} The Suttles filed a motion to modify the arbitration award with the trial court arguing, in part, that NTM was insolvent and that, by piercing the corporate veil, DeCesare should be held personally liable for the arbitration award because DeCesare holds the assets of NTM. The trial court denied this motion to modify the award.
 {¶ 4} Ultimately, the arbitration award and the trial court's action on it were appealed to this court. This court (1) affirmed the arbitration award, (2) reversed the judgment, award, and findings as to President DeCesare, personally, and (3) reversed the award of prejudgment interest.
 {¶ 5} On remand, the trial court commenced a jury trial on April 9, 2002 on the issue of DeCesare's personal liability on the following claims: (1) fraud; (2) piercing the corporate veil; and, (3) violations of the Ohio Consumer Sales Practices Act ("OCSPA" or "CSPA"). At the conclusion of the Suttles' case, DeCesare moved for a directed verdict. The court reserved its ruling pending the presentation of DeCesare's case in chief. At the close of DeCesare's case, the court, finding that "the evidence does not support a finding in fraud or a violation of the CSPA to support piercing the corporate veil," granted a directed verdict in favor of DeCesare and dismissed the jury.
 {¶ 6} The Suttles, appealing from this adverse trial action, present four assignments of error for review.
 I {¶ 7} The first assignment of error states: "The trial court erred in granting defendant's motion in limine, which precluded plaintiffs from calling 15 former customers of defendant as witnesses at trial who would have established defendant's pattern of conduct and fraudulent scheme."
 {¶ 8} The record indicates that DeCesare filed a motion in limine on January 28, 2002, approximately two-and-one-half months prior to the jury trial, seeking to preclude testimony from other customers of NTM based on a lack of relevance and a danger of unfair prejudice pursuant to Evid.R. 401-403. The Suttles attached affidavits from six of these former customers (specifically, the affidavits of Linda Curtis, John Taylor, Steve Wimmer, Kathleen Bacha, John Kazlauskas and David Candelaria, which averred instances of poor workmanship and quality in the construction of their NTM homes) to their "witness and exhibit list," which was filed with the court on January 22, 2002 in preparation for trial. Despite this filing, the Suttles filed no brief in opposition to the motion in limine. The court's journal contains no ruling on this motion in limine.[1] Furthermore, the record contains no indication that "other customer" evidence was introduced or proffered during the trial.
 {¶ 9} Simply put, the record fails to demonstrate the claimed error; to-wit, that the trial court granted the motion in limine. See App.R. 16(A)(3), (6)-(7). Absent such a ruling, the Suttles were free to attempt to offer this evidence at trial, but failed to do so. Assuming, for the sake of argument, that the court had ruled on the motion and granted it, appeal of the issue was not preserved by the appellants due to the failure to seek introduction of the contested evidence by a formal proffer or otherwise seek the introduction of the testimony at trial. SeeState v. Grubb (1986), 28 Ohio St.3d 199, syllabus; McConnell v. HuntSports Ent. (1999), 132 Ohio App.3d 657, 686; Santora v. Pulte Homes ofOhio Corp. (July 26, 2001), Cuyahoga App. No. 77825. Furthermore, even if the court had granted the motion in limine and plaintiffs had preserved the error for review by offering that evidence at trial, the court properly excluded the "other customer" evidence since it was irrelevant to proving DeCesare's personal liability involving this problematic home construction transaction, and its probative value would be substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} The remaining assignments of error each involve the ruling on the directed verdict. We note that the following was recently stated by this court in connection with the review of a directed verdict ruling:
 {¶ 12} "Civ.R. 50(A)(4) sets forth the standard for ruling on a motion for a directed verdict. It states:
 {¶ 13} "`When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.'
 {¶ 14} "A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his or her claim. Glover v. Boehm Pressed Steel Co. (1997), 122 Ohio App.3d 702,702 N.E.2d 929. A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury and, therefore, presents a question of law, not one of fact. Wagner v. Midwestern Indemn.Co., 83 Ohio St.3d 287, 294, 1998-Ohio-111, 699 N.E.2d 507." Sullins v.Univ. Hospitals of Cleveland, Cuyahoga App. No. 80444, 2003-Ohio-398, at ¶ 38-40.
 II {¶ 15} The second assignment of error states: "The trial court erred in granting defendant's motion for a directed verdict on the issue of fraud."
 {¶ 16} In order to prevail on a claim for common law fraud, a plaintiff must prove the following elements:
 {¶ 17} "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, citing Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, and Cohen v. Lamko,Inc. (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 502, 462 N.E.2d 407,409; see, also, Integrity Tech. Servs. v. Holland Mgmt., Medina App. No. 02CA0009-M, 2002-Ohio-5258, at ¶ 43-44.
 {¶ 18} Appellants' fraud claim is based on a number of theories. First, they claim that they were not afforded a warranty on the workmanship in the construction of their new home, despite the purchase agreement representation, at Item 10 therein, that "Seller will furnish the Buyer at closing with a Limited Warranty Agreement in accordance with the Building Industry Association of Cleveland ("BIA")." Second, they claim that DeCesare made various statements in connection with proposed changes to the original design of the home which misrepresented his ability to affect those design modifications in a workmanlike manner.
 {¶ 19} With regard to the limited warranty claim, the record reflects that the Suttles made a claim under the warranty to the BIA of Lorain County and that NTM attempted to resolve some of the complaints by working through the BIA's Professional Standards Committee's recommendations on that claim. DeCesare testified that the BIA warranty provisions are virtually unchanged from county to county, and that he belonged to the Cleveland affiliate. In any event, DeCesare provided the Suttles with a limited warranty which, although worked through the Lorain affiliate, complied with the BIA standards of Cleveland. Contrary to appellant's assertion, and as the court found, this does not demonstrate fraud.
 {¶ 20} With regard to alleged untruthful statements, Mr. Suttle was confronted by his earlier deposition testimony during cross-examination by the defense. During that deposition, defense counsel asked Mr. Suttle, "Are there particular things that Mr. DeCesare said to you, either before you signed the contract in February or during the construction period that you now believe to be untrue?" Mr. Suttle answered in his deposition, "Well no. The only thing during those construction periods, negotiation periods, I guess no." When next asked at trial whether this "no" answer was truthful when it was made, Mr. Suttle answered, "Yes, I am sure." This colloquy destroys the fraud claim premised on alleged false statements.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} At this point the remaining assignments will be addressed together since they are interrelated.
 III {¶ 23} The third assignment of error states: "The trial court erred in granting defendant's motion for a directed verdict on the issue of piercing the corporate veil."
 {¶ 24} The fourth assignment of error states: "The trial court erred in granting defendant's motion for a directed verdict on the issue of consumer sales practices act violations since defendant was directly involved in numerous violations of the act."
 {¶ 25} Piercing the corporate veil so as to hold an individual shareholder, such as DeCesare, liable mandates the following consideration:
 {¶ 26} "* * * the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." BelvedereCondominium Unit Owners' Ass'n. v. R.E. Roark Cos., 67 Ohio St.3d 274,289, 1993-Ohio-119; see, also, Grayson v. Cadillac Builders, Inc. (Sept. 14, 1995), Cuyahoga App. No. 68551.
 {¶ 27} Ohio's Consumer Sales Practices Act is codified in R.C.1345.01 et seq. The OCSPA prohibits false and deceptive practices in consumer transactions.
 {¶ 28} The OCSPA applies to new home construction:
 {¶ 29} "The OCSPA * * * prohibits suppliers from committing unfair, deceptive or unconscionable acts or practices in consumer transactions. R.C. 1345.02; R.C. 1345.03. A consumer transaction includes a `service.' R.C. 1345.01(A). A `service' includes `the construction of a single-family dwelling unit by a supplier on the real property of a consumer.' Ohio Adm. Code 109:4-4-01 (adopted pursuant to R.C. 1345.05 to define practices which violate R.C. 1345.02 or R.C. 1345.03). Thus, the OCSPA applies to transactions that include a contract to construct a residence. Keiber v. Spicer Const. Co. (1993), 85 Ohio App.3d 391, 392,619 N.E.2d 1105; Fesman v. Berger, 1995 Ohio App. LEXIS 5327 (Dec. 6, 1995), Hamilton App. No. C-940400, unreported." (Footnote omitted.) Byersv. Coppel, Ross App. No. 01CA2586, 2001-Ohio-2392; see, also, Saraf v.Maronda Homes, Inc., Franklin App. No. 02AP-461, 2002-Ohio-6741, at ¶ 41.
 {¶ 30} R.C. 1345.02 addresses unfair or deceptive practices and states, in pertinent part:
 {¶ 31} "(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 {¶ 32} "(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 {¶ 33} "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
 {¶ 34} "(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
 {¶ 35} "(3) That the subject of a consumer transaction is new, or unused, if it is not;
 {¶ 36} "(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;
 {¶ 37} "(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;
 {¶ 38} "(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;
 {¶ 39} "(7) That replacement or repair is needed, if it is not;
 {¶ 40} "(8) That a specific price advantage exists, if it does not;
 {¶ 41} "(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;
 {¶ 42} "(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."
 {¶ 43} R.C. 1345.03 addresses unconscionable consumer sales practices and states, in pertinent part:
 {¶ 44} "(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 {¶ 45} "(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
 {¶ 46} "(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
 {¶ 47} "(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;
 {¶ 48} "(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
 {¶ 49} "(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;
 {¶ 50} "(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;
 {¶ 51} "(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment;
 {¶ 52} "(7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy."
 {¶ 53} In order to recover under R.C. 1345.03, a consumer must show that a supplier acted unconscionably and knowingly. Karst v.Goldberg (1993), 88 Ohio App.3d 413, 418, 623 N.E.2d 1348. While proof of intent is not required to prove deception under R.C. 1345.02, proof of knowledge is a requirement to prove an unconscionable act under R.C.1345.03. Id. "Knowledge," under R.C. 1345.01(E), "means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."
 {¶ 54} Appellants generally argue that DeCesare committed unfair or deceptive practices in violation of R.C. 1345.02 in: (1) failing to honor the express limited BIA warranty contained in the purchase agreement or representing that the agreement contained a BIA limited warranty when it, allegedly, did not, see R.C. 1345.02(B)(10); and, (2) avoiding his legal obligations toward the Suttles in not constructing the home in a workmanlike manner and not repairing the defects in the home, as mandated by the BIA limited warranty, see R.C. 1345.02(A) and (B)(10). As previously addressed in the second assignment herein, the Suttles failed to demonstrate that they were not afforded the benefits of the BIA limited warranty. Accordingly, the court did not err in failing to pierce the corporate veil.
 {¶ 55} Appellants generally argue that DeCesare committed an unconscionable act in violation of R.C. 1345.03(A) by evading his legal obligations to the Suttles. The Suttles have failed to produce evidence that DeCesare, who as general contractor gave work on the home construction to subcontractors, which work product was successfully passed inspection by the city of Fairview Park's building department, acted with knowledge of the shoddy work. Therefore, he should not be held personally liable for the alleged unconscionable consumer sales practices.
 {¶ 56} The third and fourth assignments of error are overruled.
Judgment affirmed.
COLLEEN CONWAY COONEY, J., concurs in judgment only.
PATRICIA A. BLACKMON, P.J., dissents with separate opinion.
[1] It is a bedrock principle of law that a court speaks through its journal. State v. King (1994), 70 Ohio St.3d 158, 162-163, citingState ex rel. Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118.