Thomas, Appellee; Brown, Attorney General, Appellant, *v.* Sun Furniture and Appliance Company, Appellant.

[Cite as Thomas v. Sun Furniture Co. (1978), 61 Ohio App. 2d 78.]

(Nos. C-77606 and C-77630—Decided December 13, 1978.)

*Mr. John D. Woliver,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. Robert S. Tongren, Mr. Gary S. Petok* and *Ms. Barbara K. Roman,* for appellant-intervenor, the Attorney General of Ohio.

*Mr. Lee B. Kasson, Jr.,* for appellant Sun Furniture and Appliance Co.

Bettman, J. This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; the transcript of the proceedings; and the briefs and the arguments of counsel.

Two principal issues are raised by these consolidated appeals: first, whether prejudgment wage attachments are lawful in Ohio; and, second, whether proof of an intent to deceive is required before a supplier can be found to have committed a deceptive act or practice in violation of R. C. 1345.02.

The genesis of the action was the mailing by defendant, Sun Furniture and Appliance Company (Sun), to plaintiff, Remonia Thomas (Thomas), of two "Notices of Court Action to Collect Debt" in the form prescribed by and fully set out in R. C. 2715.02.

Thomas brought an action against Sun pursuant to R. C. 1345.09 alleging that Sun's acts constituted a deceptive con-

sumer sales practice in violation of R. C. 1345.02. Pursuant to R. C. 1345.07, the Attorney General Of Ohio, William J. Brown, filed a complaint, as intervenor, making the same allegations against Sun and praying for a permanent injunction.

The facts were not in dispute and the court determined the matter on the motions for summary judgment filed by each of the three parties. It held that: (1) Attachments of wages prior to judgment are no longer permitted; and (2) Sun was not in violation of R. C. 1345.02 since it had not intended to commit a deceptive act, being uncertain as to the law on prejudgment garnishments. The court enjoined Sun from attaching personal earnings and sending out "Notices of Court Action to Collect Debt" notices prior to judgment and ordered each party to pay its own costs.

Thomas did not appeal. The Attorney General appealed that part of the decision holding that proof of an intent to deceive was necessary to establish a violation of R. C. 1345.02 and that, accordingly, Sun had not violated the statute. Sun appealed the court's holding that prejudgment attachments of personal earnings are no longer lawful in Ohio.

In support of its assignment of error, Sun argues that since its claim was less than $500 it is governed by county court procedure as set out in R. C. Chapter 1911.* Specifically, it points to R. C. 1911.21 which permits attachments before the commencement of suit. This argument is without merit. It ignores the fact that R. C. 1911.21 must be construed *in pari materia* with R. C. 1911.40 which provides:

"A person seeking an order of attachment against personal earnings of a debtor, or an order in aid of execution against personal earnings of a debtor in an action upon a claim, *must first make a demand in writing as provided in section 2715.02 of the Revised Code.*" (Emphasis added.)

Further R. C. 2715.02 was amended September 16, 1970 (133 Ohio Laws 191), to specifically state: "The demand shall be made *after* judgment is obtained***." (Emphasis added.)

---

* Sun concedes that were its claim in excess of $500 it would be controlled by procedures in Courts of Common Pleas governing attachments set out in R. C. Chapter 2715, which, since the passage of Am. Sub. S.B. 85 effective 9-16-70, clearly proscribe prejudgment attachments of personal earnings.

From a complete reading of R. C. 2715.02, it is apparent that compliance therewith is not possible before a judgment has been obtained. Under R. C. 1911.40, compliance with R. C. 2715.02 is a condition precedent to an attachment of personal earnings. The conclusion is therefore inescapable that personal earnings of a debtor cannot be attached prior to judgment. This conclusion is reinforced by R. C. 1911.33 which requires, as a condition for the commencement of an action in garnishment, a sworn statement that a 2715.02 demand has been made. See Note, *Garnishment in Ohio: Where is it Now?* 32 Ohio St. L. J. 856 (1971).

It should further be noted that in *Sniadach* v. *Family Finance Corp.* (1969), 395 U. S. 337, the court held that, except in some extraordinary situations, prejudgment garnishment procedure violates fundamental principles of due process. Obviously, there is nothing extraordinary here, where Sun was attempting to collect the price of a bed from a resident of the county. Sun's assignment of error is without merit.

The Attorney General assigns two errors, the first of which alleges that the trial court erred in holding that before Sun could be found in violation of R. C. 1345.02, proof of an intent to deceive was required. This section provides in pertinent part:

"(A) No supplier shall commit a deceptive act or practice in connection with a consumer transaction. Such deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

From an analysis of the Consumer Sales Practices Act (R. C. 1345.01 through 1345.13; Amended Substitute H. B. 103, 134 Ohio Laws 1233) we conclude that the legislature did not contemplate that proof of an intent to deceive should be required to establish a violation of R. C. 1345.02. First, the word "intent" is not included in the section. It easily could have been, had that been the legislature's intent. Second, this omission of a required mental state on the part of the supplier contrasts with the explicit requirement included in R. C. 1345.03 that acts be done "knowingly." Third, R. C. 1345.11 specifically excuses a supplier from a violation of R. C. 1345.02 if he can show the violation was the result of a *bona fide* error. This section would be superfluous if R. C. 1345.02

required proof that the deceptive act had been done intentionally.

The conclusion that intent to deceive is not a necessary element of R. C. 1345.02 has been reached by other courts. *Riley* v. *Enterprise Furniture Co., Inc.* (1977), 54 Ohio Misc. 1; *Brown* v. *Bredenbeck* (1975), 2 Ohio Op. 3d 286; see *Bell* v. *Kent-Brown Chevrolet Co.* (1977), 1 Kan. App. 131, 561 P. 2d 907.

Our conclusion is also supported by the history and purpose of consumer protection statutes. The Uniform Consumer Sales Practices Act, upon which the Ohio statute is modeled, states, in part, that the Act is to be construed to promote the following policies:

"(2) to protect consumers from suppliers who commit deceptive and unconscionable sales practices;

"(3) to encourage the development of fair consumer sales practices;***." 7A Uniform Laws Anno. 3, Uniform Consumer Sales Practices Act, Section 1 (1978).

The staff report of the Ohio Legislative Service Commission, which the legislature had before it when it considered and enacted the Ohio Consumer Sales Practices Act, states, in its preface:

"Deception is the classic consumer problem. From an early time the law has provided remedies for the buyer who has been deceived. As marketing and consumer services have become more complex, the private remedies of the common law, and traditional criminal actions, have become relatively ineffective as a means by which the consumer may protect himself, and government has intervened.***

"The word 'fraud' connotes the common law concept in which one must prove that the seller intended to deceive the buyer. 'Deception' is a much broader term in which the issue of the seller's intent is avoided."

Ohio Legislative Service Commission, Report No. 102, Fraud, Deception and Other Abuses in Consumer Sales and Services (1971).

In other words, the very reason for the enactment of the Consumer Sales Practices Act was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in order to establish fraud. To require proof of intent would

effectively emasculate the act and contradict its fundamental purpose.

Buttressing our conclusion is the interpretation given the Federal Trade Commission Act. The Uniform Consumer Sales Practices Act, Section 1 (7A Uniform Laws Anno. 3 [1978]) states that it is to be construed not inconsistently with the policies of the Federal Trade Commission Act. The analogous part of the FTC Act states: "***unfair or deceptive acts or practices in commerce are hereby declared unlawful." Title 15, U. S. Code, Section 45 (a) (1). The federal courts have uniformly held that an intent to deceive is not a required element of a violation of this statute. The likelihood of deception or the propensity to deceive is the criterion by which the act or practice is judged. *Beneficial Corp.* v. *F.T.C.* (C.A. 3, 1976), 542 F. 2d 611, *certiorari denied,* 430 U. S. 983 (1977); *Doherty, Clifford, Steers & Shenfield, Inc.* v. *F.T.C.* (C.A. 6, 1968), 392 F. 2d 921; *Chrysler Corp.* v. *F.T.C.* (C.A.D.C. 1977), 561 F. 2d 357. Accordingly, we sustain this assignment of error.

As his second assignment of error, the Attorney General maintains that the trial court erred in holding that Sun had not committed a deceptive act in violation of R. C. 1345.02. As previously indicated, Sun sent Thomas two demands for payment in the form captioned "Notice of Court Action to Collect Debt" prescribed by R. C. 2715.02, for use after judgment. In fact, Sun had obtained no judgment nor even commenced suit. On one of the notices Sun had crossed out the word "was" in the sentence "judgment was obtained against you" and substituted in minute letters the words "will be." Otherwise, the form was unchanged. Considering the overall import of the form this was substantially without significance.

Each notice on its face could not but create in the mind of an average person the impression that a court of law had rendered a judgment against him and that unless the full amount demanded was paid within 15 days Sun could lawfully proceed to have his employer withhold money from his wages which in turn could cause the loss of his job. All of this was false and the notices were therefore deceptive as a matter of law and a violation of R. C. 1345.02. See *Liggins* v. *May Co.* (1977), 7 Ohio Op. 3d 164, 373 N. E. 2d 404; *Slough*

v. *F.T.C.* (C.A. 5, 1968), 396 F. 2d 870, *certiorari denied,* 393 U. S. 980; *In the Matter of Neighborhood Periodical Club, Inc.* (1972), 81 F.T.C. Decisions 93. The assignment of error is sustained.

In view of our determinations on the several assignments of error the decision of the trial court that prejudgment attachments of personal earnings are unlawful and its order enjoining Sun from seeking such attachments and from sending debtors the notices required by R. C. 2715.02 prior to the entry of judgment, is affirmed.

Having found that the acts of defendant constituted a deceptive practice in violation of R. C. 1345.02, the case will be remanded for the issuance of a permanent injunction fully proscribing such deceptive practices.

*Judgment affirmed in part and reversed in part.*

KEEFE, P. J., and BLACK, J., concur.