**RICE**

v.

**OHIO LOTTERY COMMISSION.**■

Court of Claims of Ohio.

No. 97–05690.

Decided Jan. 25, 1999.

26

*Barry Eckstein* and *Frank S. Carlson,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Gregg H. Bachmann,* Assistant Attorney General, for defendant.

RUSSELL LEACH, Judge.

Plaintiff brought the instant action against defendant, alleging claims for breach of contract and violation of the Ohio Consumer Sales Practices Act found in R.C. 1345.01 *et seq.* Defendant has denied liability.

The court held a bifurcated trial, limited solely to the issue of liability. The findings and conclusions herein are derived from the documents and pleadings in the case file, evidence at trial, and the respective presentations by the parties.

Plaintiff, Charles Rice, Jr., received a total of $6,913,348 before taxes as the sole winner of the July 19, 1995 "Ohio Six of Six Super Lotto drawing." Defendant operates under the authority granted in R.C. Chapter 3770. R.C. 3770.03 provides:

"The state lottery commission shall promulgate rules under which a statewide lottery may be conducted pursuant to Chapter 119. of the Revised Code. Subjects covered in such rules shall include but need not be limited to:

"* * *

"(A)(3) The * * * value of prize awards, * * * and the manner in which prizes shall be awarded to holders of winning tickets."

The Ohio Administrative Code establishes two types of payment options available for lottery purchasers. At the time of purchase, lottery players elect to receive any potential winnings as either a lump-sum payment or in twenty-six annual disbursements. The payment options are set forth in Ohio Adm.Code 3770:1–7–100 and 3770:1–8–04.

A ticket holder who chooses annuity payments receives annual payments from the Deferred Prizes Trust Fund ("DPTF") pursuant to Ohio Adm.Code 3770:1–7–100(H)(6), which provides:

"The lottery transfers to the Deferred Prizes Trust Fund an amount of cash determined by the director which equals the present value of the gross prize award won in a drawing to supply investment principal for funding long-term prize obligations, less the amount determined to be payable to the winner as a first annual installment. This present value transfer is less than the advertised jackpot. Game number one hundred offers jackpots paid on a deferred basis over twenty-six years."

The parties agree that plaintiff was paid according to Ohio Adm.Code 3770:1–8–04(C)(4), which provides:

"The director may adopt an order that gives a player the option to receive the present cash value of a prize when the prize per each winning wager is greater than two hundred fifty thousand dollars. *Present cash value shall be determined*

*by the director.* The player shall exercise such option when the ticket is purchased, and such option shall not be revoked." (Emphasis added.)

Plaintiff's claims rely on the assertion that defendant's rules and regulations for determining the "present cash value" of a prize jackpot are inconsistent with the Ohio Administrative Code and, therefore, represent an arbitrary and unlawful exercise of discretion. Plaintiff also argues that defendant represented to him that he would receive the present cash value of the announced prize, but paid plaintiff less than the present cash value of the jackpot. As a result of the alleged misrepresentations, plaintiff asserts that defendant violated the Consumer Sales Practices Act by engaging in an unfair and deceptive act or practice.

## I. BREACH-OF-CONTRACT CLAIM

█ The sale and purchase of lottery tickets are governed by general principles of contract law. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292–293 Additionally, the lottery tickets purchased and redeemed by plaintiff contained express terms requiring compliance with the rules and regulations of the Lottery Commission. Therefore, plaintiff agreed to abide by the terms of the game. *Id.* at 298, 587 N.E.2d at 292. See, also, *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm.* (1994), 99 Ohio App.3d 269, 650 N.E.2d 498.

█ In this case, it is undisputed that plaintiff is bound by the rules and regulations promulgated by defendant, which became part of the contract when plaintiff purchased his lottery ticket. Plaintiff exercised his option to receive the present cash value of his prize in a lump-sum payment. However, plaintiff contends that the cash option, present value discount policy established by defendant in January 1992 is an abuse of discretion because it is inconsistent with the provisions of R.C. Chapter 3770. Specifically, plaintiff contends that the terms "present value" and "present cash value," as used in Ohio Adm.Code 3770:1–7–100(H)(6) and 3770:1–8–04(C)(4), respectively, refer to the same definite figure whether payment is made to a cash option winner or to the DPTF in the case of an annuity winner.

The policy at issue, which was adopted on January 24, 1992, states in part:

"[T]he interest rate used to compute present value of the deferred jackpot value for cash option winning wagers of the Super Lotto game should be defined as: a rate equal to the interest rate recommended by the Treasurer of State to be used for the transfer amounts related to deferred prize winners plus fifty basis points (0.5%) *or 8%,* which ever is greater." (Emphasis added.)

Defendant's 1992 policy ensures that the interest rate used to compute the jackpot value for cash option winners will be at least one-half of one percent

greater than the rate used for annuity transfer amounts, but not less than the "floor" rate of eight percent. The result of defendant's policy is that a cash option winner will receive a payment that is less than the amount that is transferred to the DPTF and paid to the annuity prize winner.

Both parties presented extensive evidence at trial regarding the meaning of "present cash value" as the term applies to cash option and annuity prize winners. Plaintiff claims that the terms are synonymous and have a distinct and ascertainable meaning that must be applied in paying jackpot winners under either option.

Conversely, defendant argues that the use of different interest rates is necessary to satisfy its operational expenses and statutory obligations. Defendant also maintains that plaintiff bargained for, and received, the present value of the prize in an amount that was known to plaintiff at the time he purchased his tickets.

The court finds that defendant did not abuse its discretion by implementing a policy that effects a difference between the term "present value" as used in Ohio Adm.Code 3770:1–8–04(C)(4) and "present cash value" as used in Ohio Adm.Code 3770:1–7–100(H)(6). Pursuant to Ohio Adm.Code 3770:1–8–04(C)(4), defendant's director has the discretion to establish the discount rate that determines the present value of the cash option payout, and there are no statutory or Ohio Administrative Code provisions that limit the director's discretion in this respect or that otherwise equate the cash option discount rate with the treasurer's rate for the DPTF.

Performance of an administrative body's responsibilities necessarily involves the exercise of discretion. "It is the function of the legislative body to determine policy and to fix the legal principles which are to govern in given cases. * * * However, it is not possible for the legislature to design a rule to fit every potential circumstance." *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 73, 9 OBR 273, 276, 458 N.E.2d 852, 857. Accordingly, legislation may be general in nature and allow an administrative body discretion to make subordinate rules and policy. *Id.*

The court concludes that defendant's January 24, 1992 policy is reasonable and that defendant did not abuse its discretion by establishing a cash option, present value discount rate that is different from the rate set by the Treasurer for transfers to the DPTF. Defendant operates a profit-driven enterprise that requires policies that enable it to react to business factors such as competition from multistate lotteries, interest rate changes, and other business risks. The court also notes that, in addition to operating costs, defendant has a statutory fiscal obligation to make mandatory profit transfers to support public education. See R.C. 3770.06(B).

■ Defendant not only complied with its administrative rules and properly paid plaintiff pursuant to their contract, but the preponderance of the evidence indicates that plaintiff had either actual or constructive notice of the payout amount of the jackpot cash option when he purchased his ticket. Evidence presented at trial revealed that all lottery on-line ticket terminals have the capability to display and provide a printout of the present amount of the cash option prize at the time the purchaser buys his ticket and elects to receive either the annuity or cash option. Lottery players can also learn the amount of the annuity or cash option payout by calling a toll-free public information telephone number listed on lottery bet cards and by reading "How to Play" brochures that are available at lottery sales locations. In light of the availability of the exact payout amounts, plaintiff cannot now claim that defendant's advertising, regulations, or policies resulted in a misrepresentation of the payout amount that constituted a basis of the bargain between plaintiff and defendant at the time plaintiff purchased his tickets. Accordingly, the court concludes that defendant did not breach its contract with plaintiff.

## II. OHIO CONSUMER SALES PRACTICES ACT CLAIM

■ Plaintiff next contends that defendant's representations that he would be paid the "present cash value" of the jackpot prize is a deceptive and unconscionable act that violates the Ohio Consumer Sales Practices Act. The court finds this claim is also without merit.

■ The purpose of R.C. Chapter 1345, the Ohio Consumer Sales Practices Act, is to protect consumers from suppliers who commit deceptive or unconscionable sales practices. *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App.2d 78, 81, 11 O.O.3d 26, 28, 399 N.E.2d 567, 569. The act is remedial and courts must liberally construe it in favor of the consumer. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935; *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 334, 676 N.E.2d 151, 156–157.

■ Intent to deceive is not an element required for a violation of the deceptive-practices portion of the Act. *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 823, 586 N.E.2d 1113, 1119; *Thomas, supra,* at 82–83, 11 O.O.3d at 28–29, 399 N.E.2d at 570. An act is deceptive only if it " 'has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.' " *Funk, supra,* quoting *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286, 287.

As stated above, the court finds that plaintiff had notice of the material terms of the contract, including the jackpot payout amount, when he elected the lump-sum cash option. Consequently, the court finds that defendant's policy, which

results in different "present value" figures for the annuity and cash options, is not a deceptive act as contemplated by the Act.

For the foregoing reasons, the court concludes that plaintiff has failed to prove his claims for breach of contract and violation of the Ohio Consumer Sales Practices Act by a preponderance of the evidence. Judgment shall be rendered in favor of defendant.

*Judgment for defendant.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.