DECISION
Plaintiff-appellant, Richard C. Board, personally and as executor of the estate of Rebecca Board, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Lottery Commission.
Appellant held the winning ticket for the Ohio Super Lotto drawing for January 25, 1997. At the time Mr. Board purchased the winning ticket, he selected the "cash option" for the payment of any eventual winnings. Under this cash option, the gross amount paid was $10,776,717. The Boards elected to claim the prize as co-owners, and each received $5,388,358.50, less withheld taxes.
The amount of the announced jackpot prize for the Super Lotto game in question was $24,000,000. This amount was only payable, however, if the winner had elected to receive his proceeds in twenty-six equal annual installments. The Boards were paid the lesser amount which represented the present cash value which is computed by using an eight percent discount or interest rate to arrive at the present value of the twenty-six year income stream represented by the annuity option.
The Boards filed their complaint in the Court of Claims on April 28, 1997, alleging the Lottery Commission had failed to pay them the true value of their prize. The Boards sought recovery based upon breach of contract and violation of the Ohio Consumer Sales Practices Act. Mrs. Board died during the course of litigation, and Mr. Board was substituted as a real party in interest in his capacity as executor of her estate. The matter proceeded to trial and on January 25, 1999, the Court of Claims entered judgment for the commission on both counts of the complaint.
Mr. Board in his personal capacity and as executor of Mrs. Board's estate, has timely appealed and brings the following three assignments of error:
 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT HOLD THAT APPELLEE'S POLICY ADOPTED ON JANUARY 24, 1992 TO PAY CASH OPTION WINNERS A LESSER AMOUNT THAN THAT PAID TO THE ANNUITY OPTION WINNERS AND THE DEFERRED PRIZES TRUST FUND CONFLICTS WITH THE PROVISIONS OF OHIO ADMINISTRATIVE CODE SUBSECTIONS 3770:1-7-100(H)(6) AND 3770:1-8-04(C)(4).
 2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT APPELLEE'S POLICY TO PAY CASH OPTION WINNERS OF THE SUPER LOTTO GAME ADOPTED ON JANUARY 24, 1992, DID NOT CONSTITUTE AN ABUSE OF DISCRETION.
 3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT APPELLEE'S ADVERTISING OF THE CASH OPTION PRIZE OF THE SUPER LOTTO GAME TO BE THE "PRESENT CASH VALUE" OF THE JACKPOT AMOUNT WAS NOT A DECEPTIVE OR UNCONSCIONABLE SALES PRACTICE PROHIBITED BY OHIO REVISED CODE CHAPTER 1345 AND THE SUBSTANTIVE RULES ADOPTED TO IMPLEMENT THAT LEGISLATION.
Appellant's first two assignments of error are both based upon the breach of contract claim in the complaint, involve interpretation of related statutes and regulations, and may conveniently be addressed together.
The sale and redemption of lottery tickets are governed by general principles of contract law. Peters v. Ohio StateLottery Commission (1992), 63 Ohio St.3d 296, 299. Lottery tickets such as those purchased by appellant contain express terms requiring compliance with the rules and regulations of the commission, and lottery players are deemed to agree to abide by the terms of the game. Id. at 298; Woodbridge Partners Group, Inc.v. Ohio Lottery Comm. (1994), 99 Ohio App.3d 269.
At the time of purchase, appellant exercised the option to receive his prize in a lump-sum payment. Rules for the Ohio Super Lotto game are found at Ohio Adm. Code 3770:1-7-100, and give players the choice of "cash option or annual payment" at the time of purchase. Ohio Adm. Code 3770:1-7-100(I). Ohio Adm. Code3770:1-8-04(C) provides for cash option payouts in all lotto games generally, and at the time this case arose provided: "Present cash value shall be determined by the [Ohio Lottery] director." Ohio Adm. Code 3770:1-8-04(C)(4). And applicable to the Super Lotto game, present cash value is specifically referenced in the following language: "The discounted present cash value of a jackpot amount shall be determined by the director based on the formula established by the director pursuant to the authority granted under rule 3770:1-8-04 of the Administrative Code." Ohio Adm. Code 3770:1-7-100(I)(2). There is no express statutory or administrative code language limiting the director's discretion in determining the cash value option.
In contrast to a "cash option" payout, as selected by appellant, a player may select payment in annual installment payments. When this happens, Ohio Adm. Code 3770:1-7-100(H)(6) requires the director to transfer to the treasurer of state a sum sufficient to "supply investment principal for funding long-term prize obligations, less the amount determined to be payable to the winner as a first annual installment." This money is transferred to the Deferred Prizes Trust Fund ("DPTF"). The treasurer of state determines the interest rate to be applied and the corresponding sum necessary to produce the required income to serve the purposes of the DPTF. The treasurer makes such investments pursuant to his authority under R.C. 135.143.
Appellant's principal contention is that the discount rate of eight percent applied by the lottery director in determining the value of the cash option is incorrect because it is higher than the rate currently used by the treasurer of state for the DPTF. This higher interest rate results in a lower cash option value than the sum transferred to the treasurer of state for the DPTF, which appears to have been computed on the basis of a seven percent discount rate for lottery winners having selected the annual prize payment during the period in question. Appellants, therefore, assert that they are due an amount equal to what would have been transferred to the DPTF had they selected the annual payment option.
While the parties on appeal have argued many peripheral policy reasons in support of their respective positions, the above-described statutory scheme is entirely dispositive of the issue. The investment authority of the treasurer in funding the DPTF is distinct from that of the Ohio Lottery Director in setting the present cash value prize option under former Ohio Adm. Code3770:1-8-04(C)(4). The contract formed between the parties when purchasing a lottery ticket selecting the cash value option does not incorporate any obligation on the part of the commission to tie the cash option and DPTF annual prize payments to the same discount rate, or otherwise limit the discretion of the director in establishing the amount of cash option prizes. Various alternative interest rates proposed by appellants, including the federal long term bond rate, are certainly common indices applied to present value computations in other contexts; they are, however, completely inapposite to the present case, and are nowhere invoked in the regulations governing the Super Lotto game.
Performance of an administrative body's functions and responsibilities will necessarily involve the exercise of discretion tailored to the government goals in question. "It is the function of the legislative body to determine policy and to fix the legal principles which are to govern in given cases * * * however, it is not possible for the legislature to design a rule to fit every potential circumstance." Hudson v. Albrecht, Inc.
(1984), 9 Ohio St.3d 69, 73. In the present case, the commission has exercised the discretion granted to it by the legislature to establish a discount rate of interest applicable to the cash payment prize option. The commission set its interest rate in response to general competitive conditions, its need to fund operating costs, and its statutory obligation to provide fiscal support to public education in Ohio. Appellant has not established there was any further limitation upon the discretion of the director in setting the formula to determine cash option prizes, or any obligation, be it statutory, regulatory, or otherwise, to incorporate any other commonly used discount standard.
We accordingly find that the Court of Claims did not err in holding that the commission did not breach its contractual obligations towards appellant. Appellant's first and second assignments of error are accordingly overruled.
Appellant's third assignment of error asserts that the commission's representations that winners would be paid "the present cash value" of the jackpot prize constitutes a deceptive and unconscionable act in violation of the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq. The CSPA prohibits certain unfair or deceptive acts in connection with consumer transactions, and it is intended to protect consumers from such practices. Thomas v. Sun Furniture Appliance Co. (1978),61 Ohio App.2d 78, 81. Under the CSPA, an act is deceptive if it has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts of the transaction. Crull v. Maple ParkBody Shop (1987), 36 Ohio App.3d 153.
Appellant cannot complain that he lacked notice of the pertinent facts, or that such facts were misrepresented. The trial court had before it evidence that the lottery's promotional information openly notifies the public that the lump sum paid by the cash option is distinct from the aggregate of the twenty-six annual payments publicized for the jackpot amount. Approximately six thousand two hundred online lottery agent locations will furnish for any ticket purchaser the value of the cash option for any particular jackpot. A toll free telephone number will provide the same information to prospective players.
Under these conditions, it is highly unlikely that appellant was denied an informed choice when he played the Super Lotto game, or that he was induced by deception to play the game. In light of the availability of the exact payout amounts, appellant cannot now claim that the lottery's advertising, regulations, or policies resulted in a misrepresentation of the payout amount which would constitute a violation of the CSPA. Appellant's third assignment of error is accordingly overruled.
Based upon the foregoing, appellant's first, t, second and third assignments of error are without merit and are overruled. The judgment of the Ohio Court of Claims in favor of appellee is affirmed.
Judgment affirmed.
TYACK and PETREE, JJ., concur.