Although I agree with the majority that, construing the evidence most strongly in their favor, the Lumps have presented sufficient allegations to preclude the entry of summary judgment, I find that additional guidance is necessary for determining whether the practices complained of violate Ohio's Consumer Sales Practices Act ("CSPA" or "Act").
The CSPA is a remedial law modeled after the Federal Trade Commission Act, Title 15 U.S. Code, Section 41, 45(a)(1), which is designed to compensate for traditional consumer remedies.[2] The identified purpose for the enactment of the CSPA "was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in order to establish fraud."[3] Though the CSPA is subject to liberal construction[4] and the remedies afforded therein are in addition to remedies otherwise available for the same conduct under state or local law,[5] courts must bear in mind the identified purpose of the law in construing the Act. Despite its clearly pro-consumer stance, the Act was not intended to encompass all aspects or breaches of consumer sales agreements but was instead directed specifically toward deficiencies in common law consumer remedial protections, which forced consumers to endure the consequences of deceptive trade practices without an adequate remedy. It must necessarily follow that the Act should generally not be extended where the claim does not involve a deceptive trade practice and consumer interests are adequately protected under alternative common law, administrative, and statutory remedies.
The Lumps' claims are predicated upon asserted violations of R.C.1345.02, Unfair or Deceptive Acts or Practices, which provides:
 (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 (B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 Aside from the list of practices enumerated in R.C. 1345.02(B), the statute does not expressly define "unfair" or "deceptive," but instead, directs courts to turn to federal law for guidance, specifically mandating that:
 (C) In construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended.[6]
Relying on early federal application of subsection 45(a)(1) of the FTCA, Ohio courts adopted the position that "intent to deceive is not a required element of a violation of this statute. The likelihood of deception or the propensity to deceive is the criterion by which the act or practice is judged."[7] The generally recognized touchstone of this determination is whether the act "has the likelihood of inducing in themind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive."[8] Concomitantly, we have found that the issue is not the defendant's intention to violate the CSPA or the defendant's knowledge of a violation of the CSPA; the relevant "inquiry is whether [the] [d]efendant intentionally engaged in the prohibited acts, inducing in the mind of the consumer a belief which is not consistent with the facts."[9] Unfortunately, this standard is seldom applied with any degree of consistency, and some courts have distended the reach of the OCSPA far beyond its intended scope and purpose.
In keeping with the statutorily mandated deference to be afforded federal law, necessary guidance for the clarification and appropriate application of the Act is found in federal interpretation and application of the FTPA. This federal standard has been clarified and refined into a three-part test announced by the Federal Trade Commission ("Commission") in In the Matter of Cliffdale Associates, Inc.[10] Under this test, the Commission will consider a trade act or practice to be deceptive if:
 [F]irst, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission or practice is material.[11]
The Commission has consistently adhered to the Cliffdale Associates
standard for nearly two decades, and federal courts have followed suit by adopting the tripartite test.[12] Under Cliffdale Associates and its progeny, a statement or practice is material if it is likely to affect a consumer's decision regarding a product.[13] Express claims or representations are presumed to be material and consumer reliance thereon is presumptively reasonable.[14]
As illustrated by the majority, the Lumps allege that Best and Modern engaged in an extended pattern of conduct whereby they failed to disclose and/or misrepresented information regarding the delivery of the windows ordered by the Lumps. Though R.C. 1345.02 does not create a blanket duty to disclose,[15] it is clear that an omission may constitute a deceptive act or practice under appropriate circumstances.[16] O.A.C.109:4-3-09 provides, in pertinent part:
 (A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier:
 (1) To advertise or promise prompt delivery unless, at the time of the advertisement, the supplier has taken reasonable action to insure proper delivery;
 (2) To accept money from a consumer for goods or services ordered by mail, telephone, or otherwise and then permit eight weeks to elapse without:
 (a) Making shipment or delivery of the goods or services ordered;
(b) Making a full refund;
 (c) Advising the consumer of the duration of an extended delay and offering to send him a refund within two weeks if he so requests; or
 (d) Furnishing similar goods or services of equal or greater value as a good faith substitute.
Consistent with this provision, a supplier commits an unfair or deceptive act where, in connection with a consumer transaction, the supplier accepts payment from a customer or knows that the consumer is relying upon prompt delivery and then allows an unreasonable length of time to elapse without making shipment or delivery of the goods ordered, making a full refund, or advising the customer of the duration of the delay and offering to send the customer a refund if so requested.[17]
A supplier does not, however, violate the CSPA in every failure to deliver ordered merchandise, as deceptive conduct is a necessary predicate to liability.[18] As the majority indicates, the mere fact that delivery or performance is stalled, delayed, or untimely, or that a party is incompetent or inefficient does not produce a "likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts" or mislead reasonable consumers absent some misrepresentative statement or conduct associated with the timing of the performance or the party's competency or efficiency.
The foregoing analysis is equally applicable to general claims for breach of express or implied warranty, breach of contract, or failure to include all material representations in a contract: the CSPA was simply not intended to cover such general grievances and consumers are afforded adequate protection through common law, administrative, and statutory remedies. The fact that a warranty has been made is generally not a misleading practice or representation. Moreover, R.C. 2307.77 codifies common law claims for breach of express warranty. The majority points out that a simple breach of contract or breach of warranty will not violate the CSPA but indicates that the circumstances presented herein are distinguishable and raise genuine issues of material fact as to whether a knowing violation of the parties' agreement violates the CSPA. This does not, however, mean that an election to breach a contract or awareness that one is breaching a contract or violating a warranty gives rise to a CSPA claim in the absence of indicia of unfair or deceptive practices associated therewith. Concomitantly, one is not strictly liable for the failure to integrate into a written contract all statements, representations or promises, oral or written, made prior to the execution of a contract. Instead, the practice, representation or omission supporting these claims must be both material and likely to mislead consumers acting reasonably under the circumstances.[19]
Construing the evidence presented most strongly in the Lumps' favor, their allegations, as delineated by the majority, of continued misrepresentations and omissions concerning the delivery of the ordered windows and satisfaction of egress and building codes are sufficient to raise material issues of fact regarding whether said practices, representations or omissions, were material and of a nature likely to mislead consumers acting reasonably under the circumstances. Though summary judgment was improper under these circumstances, the Lumps maintain the burden of proving the truth of their allegations and that the conduct complained of violates the CSPA.
[2] Einhorn v. Ford Motor Company (1990), 48 Ohio St.3d 27, 29.
[3] Thomas v. Sun Furniture and Appliance Co. (1978), 61 Ohio App.2d 78,81.
[4] Einhorn, 48 Ohio St.3d at 29.
[5] R.C. 1345.13
[6] Emphasis added.
[7] Thomas, 61 Ohio App.2d at 82.
[8] Id.; Richards v. Beechmont Volvo (1998), 127 Ohio App.3d 188, 190;Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326, 334-335;Smaldino v. Larsick (1993), 90 Ohio App.3d 691, 697; State ex rel. Fisherv. Rose Chevrolet, Inc. (1992), 82 Ohio App.3d 520, 526; Funk v.Montgomery AMC/Jeep/Renault (1990), 66 Ohio App.3d 815, 823.
[9] Meade v. Nelson Auto Group (March 31, 1997), Union County App. 14-96-45, unreported (citations omitted).
[10] In the Matter of Cliffdale Associates, Inc. (1984), 103 F.T.C. 110.
[11] Id. at 165.
[12] F.T.C. v. Pantron I Corp. (9th Cir. 1994), 33 F.3d 1088, 1095, citing Southwest Sunsites, Inc. v. F.T.C. (9th Cir. 1986), 785 F.2d 1431,1435, n. 2, cert. denied, 479 U.S. 828, 107, S.Ct. 109, 93 L.Ed.2d 58;Kraft, Inc. v. F.T.C. (7th Cir. 1992), 970 F.2d 311, 314 (setting forth the test in slightly edited form), cert. denied, 507 U.S. 909,113 S.Ct. 1254, 122 L.Ed.2d 652; see, also F.T.C. v. International ComputerConcepts, Inc. (N.D.Ohio. Oct. 24, 1995), 1995 WL 767810, unreported.
[13] F.T.C. v. International Computer Concepts, supra.
[14] Id.
[15] Lintermoot v. Brown (Aug. 2, 1988), Van Wert App. No. 15-86-25, unreported (Shaw, J., concurring in judgment only).
[16] Id.; See also, Cliffdale Associates, supra.
[17] Brown v. Lyons (1974), Ohio Misc. 14.
[18] 7 A.L.R.4th 1257 (1981), Failure to deliver ordered merchandise to customer on date promised as unfair or deceptive trade practice.
[19] See, e.g., O.A.C. 109:4-3-16(B)(22); Ladarkis v. Martin (July 29, 1994), Summit Cty. C. Pl. No. CV 94-01-0234, unreported.