NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0793n.06

No. 09-4407

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 28, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| JOHN W. FERRON, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ECHOSTAR SATELLITE, LLC, et al., | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |

BEFORE:    BATCHELDER, Chief Judge;  KEITH and ROGERS, Circuit Judges.

**KEITH, Circuit Judge.**  Plaintiff-Appellant John Ferron (Ferron) brought suit against

EchoStar Satellite L.L.C. n/k/a DISH Network L.L.C. ("Echostar"), E-Management Group, Inc.

("E-Management"), Hydra Media Group, Inc. ("Hydra"), 411 Web Directory ("411 Web") and Dish

Pronto, Inc. ("Dish Pronto"), claiming their advertising campaigns violated the Ohio Consumer Sales

Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*  The district court granted the

defendants' motions for summary judgment and denied Ferron's motion seeking sanctions against

defendants for failing to produce, for a second time, certain advertisements.  Ferron now appeals.

For the reasons that follow, the district court's rulings shall be affirmed.

## FACTUAL BACKGROUND

Plaintiff-appellant John W. Ferron is an attorney who lives and practices law in the state of

Ohio.  As a means of furthering his practice, he, according to defendants, purposefully solicits,

receives, and saves email advertisements, and then files lawsuits, arguing the email advertisements violate the Ohio Consumer Sales Practices Act.

Defendant-appellee EchoStar is in the business of delivering DISH Network brand direct broadcast satellite television products and services to residential and business customers. It has contractual agreements with thousands of retailers nationwide. The retailers seek to market and sell DISH Network brand systems and packages through a variety of media, including the internet.

Defendant-appellee E-Management is one of EchoStar's independent contractor retailers. It advertises DISH Network brand satellite equipment and services. When it consummates a sale, it communicates the relevant information to EchoStar, which delivers the product.

Defendant-appellee Hydra acts as a service that connects satellite dish service retailers with companies that advertise by email. The retailers create the advertisements. Hydra then stores the advertisements on its database. Other companies access Hydra's database and send the advertisements to consumers by email. Accordingly, Hydra neither creates nor sends the advertisements it stores.

Defendant-appellee 411 Web is an online services company that offers a number of web-based services to its clients, including programs that help companies market their programs to interested customers and conduct e-mail marketing. 411 Web managed and catalogued responses to email advertisements that Echostar or its retailers sent. Ferron did not receive any emails from 411 Web at any time.

This lawsuit arises out of emails defendants allegedly sent advertising cable television services that DISH Network provides. Ferron alleges that he received hundreds of similar emails

concerning the aforementioned services. He specifically claims that these emails illegally omitted certain terms and conditions relating to the minimum length of a subscriber's contract, the mandatory leasing of equipment and the necessity of a written contract that Echostar would later impose.

The district court noted that, according to defendants, Ferron purposefully provided his email address to the approximately twelve satellite dish websites from which he later received advertisements. Before he provided his email address to the websites, Ferron contacted DISH Network call centers to obtain information about the terms and conditions of various DISH Network products and services. Accordingly, Ferron was aware of the terms allegedly excluded from the deceptive emails before he received them.

On June 12, 2006, Ferron filed his initial complaint in this case, asserting claims against Appellees EchoStar, E-Management, and Hydra. (R.2). On July 25, 2007, Ferron filed his second amended complaint which named additional defendants, including 411 Web. After numerous pleadings, on September 24, 2008, the district court granted Hydra's motion for summary judgment, ruling that Hydra is exempt from claims under OCSPA pursuant to O.R.C. §1345.12. (R.295). On August 7, 2009, the district court granted EchoStar's, E-Management's, and 411 Web's motion for summary judgment. (R.353). The district court held that, because Ferron had not been deceived by the advertisements in question, he could not prevail under OCSPA. *Id.* On December 11, 2008, during the pendency of the litigation before the district court, Ferron filed a motion for discovery sanctions as to appellees Echostar, E-Management, 411 Web, Hydra, and Dish Pronto (R. 328). On July 30, 2009, the magistrate judge denied Ferron's motion for discovery sanctions, reasoning that

sanctions were not appropriate in light of the fact that defendants had already provided Ferron the requested materials. (R.353). Ferron timely appealed each of the court's rulings against him.

## STANDARD OF REVIEW

The review of a motion for summary judgment under Federal Rule of Civil Procedure 56 seeks to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In applying this rule, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

To avoid usurping the role of the factfinder, a court deciding a summary judgment issue must accept as true the opposing party's evidence and assume all justifiable inferences that can be drawn therefrom. *Id.* at 255. However, if the adverse party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A district court's ruling regarding a matter in discovery is reviewed for an abuse of discretion. *United States v. Guy*, 978 F.2d 934, 938-39 (6th Cir. 1992).

## DISCUSSION

Ferron raises three issues on appeal. First, Ferron argues that the district court erroneously granted summary judgment to defendants Echostar, E-Management, 411 Web and Dish Pronto as to his claim under the OCSPA. Second, Ferron alleges that the district court mistakenly granted

No. 09-4407, *Ferron v. Echostar Satellite, LLC, et. al.*

summary judgment to defendant Hydra on the grounds that it was covered by the publisher exception under the OCSPA. Third, Ferron posits that the district court incorrectly denied its motion to impose discovery sanctions on the defendants for their failure to preserve electronically stored evidence.

## I.  THE DISTRICT COURT PROPERLY GRANTED DEFENDANTS ECHOSTAR'S, E-MANAGEMENT'S AND 411 WEB'S MOTION FOR SUMMARY JUDGMENT.

The issue before this Court on appeal is clear. Whether the district court properly granted summary judgment in favor of the defendants turns on whether a plaintiff seeking redress under the OCSPA must have been actually and personally deceived by the allegedly illegal advertisements.

The parties present divergent answers to this question. Ferron at no point alleges that he was personally deceived by the advertisements in question, but rather asserts that because the OCSPA punishes advertisements that from an objective observer's perspective are deceptive, his personal knowledge is irrelevant. Defendants, in contrast, allege that an individual may only advance a claim under the OCSPA if he or she was actually and personally deceived by the advertisements. Accordingly, as Ferron was aware of the terms he complains defendants excluded, summary judgment, defendants argue, should be granted in their favor. Given that the weight of the jurisprudence is in their favor, we agree with defendants' conclusion.

Ferron's claims arise under § 1345.02(A) of the Ohio Code which provides:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction.

OHIO REV. CODE § 1345.02(A).

As the district court noted, Ohio courts have written extensively on the purpose and history of the OCSPA. The court in *Thomas v. Sun Furniture and Appliance Co.*, 61 Ohio App.2d 78

(1978), explained that the law was modeled, in part, on the Uniform Consumer Sales Practices Act (UCSPA). *Id.* at 81. The UCSPA, by its own terms, must be construed "to protect consumers from suppliers who commit deceptive and unconscionable sales practices[.]" *Id.* (quoting UNIFORM CONSUMER SALES PRACTICES ACT § 1, 7A U.L.A. 3 (1978)). Likewise, the staff report of the Ohio Legislative Service Commission evidences the OCSPA's drafters' intent to curb deception:

> Deception is the classic consumer problem. From an early time, the law has provided remedies for the buyer who has been deceived. As marketing and consumer services have become more complex, the private remedies of the common law, and traditional criminal actions, have become relatively ineffective as a means by which the consumer may protect himself, and the government has intervened. . . .

*Id.* (quoting OHIO LEGISLATIVE SERVICE COMMISSION, REPORT NO. 102, FRAUD, DECEPTION AND OTHER ABUSES IN CONSUMER SALES AND SERVICES (1971)).

The text of the OCSPA, beyond providing a limited number of examples, provides no clarification as to the nature of the deceptive acts in question, but rather vests the Ohio Attorney General with the authority to define with reasonable specificity advertisements illegal under the act. OHIO REV. CODE § 1345.05(B)(1).

Ferron alleges that defendants have committed several acts that violate regulations the Attorney General has promulgated. Ferron, first, alleges that defendants have violated Ohio Administrative Code § 109:4-2-202, which provides that "it is a deceptive act or practice . . . for a supplier in the sale of offering goods or services to make any offer . . . without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications or conditions." OHIO ADMIN. CODE § 109:4-2-202. Ferron additionally alleges that defendants have violated § 109:4-3-04, which provides that an advertiser, when using

the word "free" in an advertisement, list "all of the terms, conditions and obligations upon which receipt of the 'free' goods or services are contingent[.]" *Id.* § 109:4-3-04. Finally, Ferron cites the applicable section of the Attorney General's regulations governing prizes. Section 109:4-3-06 provides that it is a deceptive act for a supplier to notify any consumer that the consumer is eligible to receive anything of value "unless the supplier clearly and conspicuously discloses to the consumer any and all conditions necessary to . . . receive anything of value."[1] *Id.* § 109:4-3-06.

As noted, defendants allege that regardless of whether they violated these provisions, Ferron can not recover because he was aware of any terms or conditions that he claims defendants excluded.

Defendants rely primarily on the jurisprudence of Ohio courts interpreting the OCSPA, which overwhelmingly supports their argument. For example, in *Chesnut v. Progressive Cas. Ins. Co*, 166 Ohio App. 3d 299 (2006), the plaintiff, a purchaser of a Saturn automobile, brought suit under the OCSPA against Progressive Insurance Co. The plaintiff specifically alleged that Progressive had committed deceptive acts by: 1) failing to obtain a salvage title after the car was damaged in a fire; and 2) not properly representing the degree of damage to the car. *Id.* at 307. The court rejected both arguments, highlighting the plaintiff's awareness of the car's history when he purchased it:

> In the instant case, Progressive titled a vehicle in accordance with the titling laws of the applicable state. As a result, the Saturn had a "clean" title, although it had previously been declared a total loss and was repaired before Chesnut purchased it. However, *Chesnut was fully aware of the situation*, as Ray's informed him that the Saturn had been damaged in a fire, and he observed the vehicle as it was being repaired. He also spent $8,500 on a car with approximately 6,000 miles on it, when the ACV was over $14,000. As Progressive stated in its brief, "this is *not a case*

---

[1] The OCSPA provides that when an advertiser commits a deceptive act, the consumer may rescind the transaction or recover the greater of three times his actual damages or 200 dollars. OHIO REV. CODE § 1345.09(b).

> *where an unsuspecting consumer purchased a vehicle* with no knowledge of its prior history and was deceived because the vehicle's title failed to reveal that it had been damaged. *Plaintiff here knew full well that the vehicle had sustained fire damage* and was able to purchase the vehicle for a fraction of its retail value."

*Id.* at 307-08 (emphasis added).

Similarly, in *Crull v. Maple Park Body Shop*, 36 Ohio App. 3d 153 (1987), the plaintiff, owner of an automobile, brought suit under the OCSPA against the defendant who had painted his car. While the defendant was holding the car so that he could paint it, it was damaged by hail. *Id.* at 153. Defendant, shortly thereafter, informed the plaintiff that additional work would be required to fix the damage. *Id.* at 157. He then quoted the plaintiff a new price which the plaintiff approved. *Id.* Plaintiff later brought suit under the OCSPA alleging that the defendant had committed a deceptive act by failing to post a sign stating that all consumers had the right to receive a written estimate as required by law. *Id.* at 156. The court, again, rejected the argument, noting that regardless of whether the sign was posted, Crull was notified of the estimate before defendant performed work on his car:

> Under the facts as presented by Sorrell's affidavit, we are unable to conclude that the failure to post the sign was likely to "induce a state of mind in [appellant] that is not in accord with the facts." Appellees provided appellant with a written estimate and appellant approved an amount larger than the original estimate before the repairs were finished. Thus, all the information required to be included in the sign was actually complied with. Therefore, we fail to see that appellant could have been deceived by the omission of the sign.

*Id.* at 158 (citations omitted). As the district court properly noted, these cases, taken together, stand

No. 09-4407, *Ferron v. Echostar Satellite, LLC, et. al.*

for the proposition "that a plaintiff who could not have been deceived by the a supplier's conduct cannot prevail on an OCSPA claim." No. 2:06-cv-00453, 2009 U.S. Dist. LEXIS 129804, *16 (Aug. 7, 2009, S.D. Ohio).[2]

Ferron, in response, presents three cases in which he alleges courts adopted the *per se* standard he advocates. Unfortunately for Ferron, each of the cases is readily distinguishable. The court's decisions in *Grieselding v. Krischak*, No. L-06-1010, 2007 Ohio 2668, at *3 (Ohio App. 6 Dist. July 1, 2007), and *Moyer Excavating & Trucking v. Lewis*, No. H-84-11, 1984 Ohio App. LEXIS 11529, 1984 WL 14421, at *1 (Ohio App. 6 Dist. Nov. 16, 1984), are inapplicable. While the courts stated that proof of knowledge or intent was not necessary to prove a violation of the OCSPA, in doing so, they were clearly referring to the state of mind of the defendant, not the consumer. *See Moyer,* 1984 Ohio App. LEXIS 11529, *3-4 (noting that because a plaintiff need not prove that the defendant acted knowingly or intentionally, a defendant will be strictly liable for its conduct); *Grieselding,* 2007 Ohio 2668, *10 (citing *Moyer* for the proposition that "the Ohio Administrative Code does not require proof of intent or knowledge; rather, any failure to comply with the regulations is deemed a 'deceptive act or practice'").

Nor are we persuaded otherwise by the court's decision in *Zindle v. Hawks*, No. 13016, 1987 Ohio App. LEXIS 8631 (Ohio App. 9 Dist., Sept. 2, 1987) – the third case Ferron cites. In *Zindle,* the court found that defendants had violated Ohio law, by failing to notify the consumer in writing

---

[2] Ferron attempts to distinguish these cases on the grounds that they arose under O.R.C. 1345.02(B) as opposed to 1345.02(A) which he alleges provides the basis for his claim. We fail to see any distinction between the sections. § 1345.02(B) merely provides concrete examples of the types of deceptive acts prohibited by § 1345.02(A).

of his right to receive an estimate. *Id.* at *6-10. The court found that a violation had occurred despite the fact that the plaintiff had received an estimate, thereby fulfilling the regulation's purposes. *Id.* at *11. While the court found a violation under the circumstances, it ultimately refused to impose liability, because the defendant established that he acted in good faith. *Id.* at *11-13. As the district court noted, "the appellate court need not have reached the issue as to whether the OCSPA was violated." 2009 U.S. Dist. LEXIS 129804, at *24-25. Accordingly, the conclusion was *obiter dicta* and need not be given the same weight as decisions to the contrary. *See, e.g., Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("We adhere . . . not to mere *obiter dicta*, but rather to the well-established rationale upon which the Court based the results of its earlier decisions. When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").[3]

Finally, contrary to Ferron's allegations, our ruling here today does not foreclose all claims under the OCSPA. Any individual who receives an advertisement excluding parts of the offer and later feels aggrieved when he or she is presented with the additional terms may seek redress under the Act. Contrary to Ferron's arguments, there is no reason to believe that such individuals will be

---

[3] Ferron, finally, alleges that our decision should be guided by the United States District Court for the Southern District of Ohio's unpublished decision in *Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08-CV-760, 2009 U.S. Dist. LEXIS 23583 (S.D. Ohio Mar. 10, 2009). Regardless of the decision's precedential value to this court, we find it to be distinguishable. At issue in *SubscriberBase* was whether Ferron must have alleged that he acted in reliance on the allegedly deceptive advertisements to proceed with a claim under the OCSPA. *Id.* at 18. The court found that he need not have acted in reliance. *See id.* at 19 ("[T]he emails represent a solicitation. It is not necessary that a sale arise out of a solicitation for a plaintiff to file suit under the OCSPA."). At issue here is the distinct question of whether a plaintiff must have been deceived by the advertisement, not whether he acted as a result of such deception. As to this narrower question, the court in *SubscriberBase* was silent.

unaware of the deception the advertisements perpetuate. When a consumer responds to a deceptive advertisement, he or she will be presented with the additional terms. At this point, if the person has taken the advertisement on its face, he or she will become aware of the discrepancy between the advertisement and the actual offer. Simply put, the only persons foreclosed by today's ruling are individuals who solicit emails from an advertiser after having researched and discovered the additional terms the advertisement allegedly excludes.

Given Ohio's jurisprudence and the original intentions of the law, we find that the district court properly dismissed defendant's claims under the OCSPA.

### II.    THE DISTRICT COURT CORRECTLY HELD THAT DEFENDANT HYDRA WAS COVERED BY THE PUBLISHER EXCEPTION TO THE OCSPA.

By its own terms, the OCSPA does not apply to:

a publisher, broadcaster, printer or other person engaged in the dissemination of information or the reproduction of printed or pictorial matter insofar as the information or matter has been disseminated or reproduced on behalf of others without knowledge that it violated [the Act].

OHIO REV. CODE § 1345.12.

As noted, the parties do not dispute that Hydra was not involved in the creation of the challenged advertisements, but rather merely stored them for the purposes of their later dissemination. Accordingly, it is clear that Hydra is precisely the sort of entity to which the exemption is intended to apply.

Ferron, in response, presents no evidence that Hydra was involved in the creation of the disseminated advertisements, but rather argues that the exemption should not apply to Hydra for two separate reasons.

Ferron, first, posits that Hydra, unlike other publishers, was not paid a flat fee for storing the challenged advertisements, but rather was paid a small fee each time a solicited customer contacted E-Management or Dish Network as a result of the advertisements Hydra had stored. Accordingly, Ferron argues that Hydra, unlike publishers which receive a flat fee, had a personal interest in ensuring that the persons solicited would respond to the advertisements. This personal interest, according to Ferron, made Hydra more than a mere publisher, broadcaster or printer.

As the district court acknowledged, Ferron's argument is not only novel, but also lacks any basis in the text of the OCSPA or this or any other court's jurisprudence. 2008 U.S. Dist. LEXIS 82841, *7-8 (S.D. Ohio, Sep. 24, 2008).

Even were we to ignore such, we find the reasoning of Ferron's argument to be flawed. Regardless of whether an advertiser is paid a flat fee for disseminating advertisements or paid on a contingent basis, depending upon the number of persons solicited who respond to the advertisement, the publisher maintains an interest in ensuring that the persons solicited respond to the advertisement. The number of persons responding to an advertisement may not determine the amount of payments a publisher paid a flat fee receives initially, but will almost inevitably affect its future business with the advertiser. That is, if the advertisement fails to produce a sufficient number of customers, regardless of whether the publisher is paid a flat fee, the advertiser will likely choose another publisher in the future, thereby eliminating future profits for the publisher.

Alternatively, Ferron argues that Hydra may not rely on the publisher excepion for any emails sent after June 14, 2006 when it received actual notice of the email's illegality as a result of the filing of Ferron's lawsuit. Ferron's argument again assumes too much. Inherent in Ferron's argument is

the assumption that his complaint sufficiently proved that the emails violated the OCSPA. As noted above, Ferron did not and can not prove any such violation.

Accordingly, the district court properly found that the publisher's exemption shields Hydra from liability.

### III. THE DISTRICT COURT PROPERLY DENIED FERRON'S MOTION TO IMPOSE DISCOVERY SANCTIONS.

Finally, Ferron appeals the district court's denial of his motion to impose sanctions on defendants Echostar, E-Management, 411-Web Dictionary, Hydra and Dish Pronto for their failure to produce to Ferron, a second time, the graphic images associated with particular email advertisements.[4]

Ferron admits that defendants initially provided him with a CD-Rom including all requested emails and any related graphic images. However, he alleges that since the CD was provided, links included in the CD to certain graphic images have expired. Accordingly, when he clicks on the links provided, no images are displayed. Ferron subsequently requested that defendants provide printed copies of the advertisements already provided. Defendants responded that they had no responsibility to maintain the advertisements in their original form once they had provided them, complete with any graphic images, to Ferron. Ferron, they allege, should have preserved the advertisements and any related images once he received them. Ferron, in response, filed the motion for sanctions at issue here.

---

[4] Although the district court did not actually rule on Ferron's motion for sanctions or his objections to the magistrate judge's order denying the motion, for purposes of this appeal, we treat the district court's order dismissing Ferron's substantive claims as also disposing of his motion for sanctions.

No. 09-4407, *Ferron v. Echostar Satellite, LLC, et. al.*

"Deference" is the "hallmark of abuse-of-discretion review . . ." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

By definition, a party holding evidence is guilty of spoliation only when it intentionally alters or destroys relevant evidence before an opposing party has the opportunity to examine it. *Simeone v. Girard City Bd. of Educ.*, 872 N.E.2d 344, 355 (Ohio App. 3d 2007). As noted, in this case, Ferron not only was presented with the opportunity to examine the requested images, he in fact examined them.

Furthermore, there is no dispute that "the plaintiff is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *See, e.g., Cincinnati Insurance Co. v. General Motors Corp.*, No. 94OT017, 1994 Ohio App. LEXIS 4960, at *9 (Ohio Ct. App. Oct. 28, 1994). Accordingly, if images associated with the email advertisements existed, they were in Ferron's possession and he should have preserved them. He could have printed them out or saved them to the hard drive on his computer. Ferron admits that he failed to take these basic steps. Instead, he now blames the defendants for not having copies of the very documents he used to draw the conclusions at issue before the court. Accordingly, his attempt to now blame defendants for his own oversight is meritless.

Accordingly, the court below was well within its discretion to decline to grant sanctions to Ferron on these grounds.

No. 09-4407, *Ferron v. Echostar Satellite, LLC, et. al.*

## CONCLUSION

For the aforementioned reasons: 1) the district court's grant of summary judgment to defendants Echostar, E-Management, 411 Web, and Dish Pronto is hereby, **AFFIRMED**; and 2) the district court's denial of Ferron's motion for discovery sanctions is also, hereby **AFFIRMED**.